Jody HELGELAND, Jessie Tanner, Virginia Wolf, Carol Schumacher, Diane Schermann, Michelle Collins, Megan Sapnar, Ingrid Ankerson, Eloise McPike, Janice Barnett, Jayne Dunnam and Robin Timm, Plaintiffs-Respondents,

v.

WISCONSIN MUNICIPALITIES, Appellant-Petitioner,

WISCONSIN STATE SENATE AND ASSEMBLY, Co-Appellant,

DEPARTMENT OF EMPLOYEE TRUST FUNDS, Employee Trust Funds Board, Eric Stanchfield and Group Insurance Board, Defendants-Respondents.

Supreme Court

*No. 2005AP2540. Oral argument October 3, 2007.
—Decided February 7, 2008.*

2008 WI 9

(Also reported in 745 N.W.2d 1.)

4

5

For the appellant-petitioner there were briefs by *Michael D. Dean* and *Michael D. Dean, LLC*, Waukesha, and oral argument by *Michael D. Dean*.

For the plaintiffs-respondents there was a brief by *Linda Roberson* and *Balisle & Roberson*, Madison; *Laurence J. Dupuis* and *ACLU of Wisconsin Foundation, Inc.*, Milwaukee; *John A. Knight* and *American Civil Liberties Union Foundation*, Chicago; and *Rose A. Saxe, James D. Esseks* and *American Civil Liberties Union Foundation*, New York, NY, and oral argument by *John A. Knight*.

For the defendants-respondents the cause was argued by *Jennifer Sloan Lattis*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. Eight Wisconsin municipalities, municipal school boards, and school districts (collectively "the municipalities")[1] seek review of a published court of appeals decision[2] affirm

---

[1] The parties referred to herein as "the municipalities" are the Town of Caledonia, the Town of Cottage Grove, the City of Green Bay, the City of Watertown, the Village of Hobart, the Village of Oostburg, the School Board of New Berlin, and Raymond School District #14.

[2] *Helgeland v. Wis. Municipalities*, 2006 WI App 216, 296 Wis. 2d 880, 724 N.W.2d 208.

8

ing an order of the Circuit Court for Dane County, David T. Flanagan, III, Judge. The circuit court denied the municipalities participation as parties in the instant case brought by state employees relating to state benefits.[3] The court of appeals affirmed the order of the circuit court. We affirm the decision of the court of appeals.

¶ 2. We begin by explaining what this case is about and what it is not about.

¶ 3. The case is about court procedure. Eight municipalities want to insert themselves into a lawsuit brought by several state employees challenging their state benefits. The question before this court is whether the court should allow these eight municipalities to inject themselves into a state-employee-oriented lawsuit, instead of bringing their own lawsuit governing the rights of their own municipal employees.

¶ 4. The procedural issue before the court is known in the law as "intervention" or "joinder."

¶ 5. Procedure is important in the law. Our judicial system values procedure because we view good procedure as tending to produce fair and sound outcomes. In deciding the procedural issue presented in the instant case, we must consider the positions of the complaining parties, the named defendants, and the eight municipalities, as well as the public's and court's interest in fair, effective, efficient case management. The municipalities

---

[3] The Wisconsin State Senate and Assembly (the legislature) also moved to intervene in the plaintiffs' action. The circuit court denied the legislature's motion in the same order that the municipalities now challenge. This court denied the legislature's petition for review of the court of appeals decision affirming the circuit court's order.

do not have a monopoly interest on the procedural issue in the instant case, as they and the dissent want the reader to believe.

■

¶ 6. Broadly speaking, a court determines whether an outside entity should intervene in or join an existing lawsuit by striking a balance between allowing the original parties to a lawsuit to conduct and conclude their own lawsuit and allowing others to join a lawsuit in the interest of the speedy and economical resolution of a controversy without rendering the lawsuit fruitlessly complex or unending. Whether to order intervention or joinder turns on judgment calls and fact assessments.

¶ 7. The eight municipalities in the present case make only generalized claims that they have interests related to the subject of the action. As we explain at length below, and as Justice Butler's concurrence explains, the municipalities have failed to demonstrate in the circuit court or here how their interests relate to the subject of the action in a direct and immediate fashion. Indeed, the dissent concedes, as it must, that the record does not detail the effects on the municipalities of a decision favoring the complainant.[4] Importantly, the Department of Employee Trust Funds and the Attorney General of the State of Wisconsin adequately represent the interest of the eight municipalities in defeating the lawsuit. The municipalities' disagreement with the way DETF and the Attorney General are handling the action is not a basis for intervention.

¶ 8. Procedure is what the instant case is about.

¶ 9. The instant case is not about the merits of the state employees' assertion that Wis. Stat. § 40.02(2)

---

[4] Dissent, ¶¶ 185–86, 193.

(2003–04), the state statute defining "dependent," violates the equal protection guarantees of Article I, Section 1 of the Wisconsin Constitution by denying gay male and lesbian state employees and their same-sex domestic partners employment benefits that are available to similarly situated heterosexual state employees and their spouses. We do not even come close to addressing this issue.

¶ 10. After acknowledging that the constitutional issue of benefits for persons in gay and lesbian domestic relationships is not at issue in the instant case,[5] the dissent immediately stirs the cauldron of hot-button issues. It touches on many issues totally unrelated to the narrow procedural question presently before this court and not even tangentially related to the constitutional question that may ultimately be raised and decided in the instant lawsuit when it is remanded to the circuit court.

¶ 11. Within its first four paragraphs, the dissent asserts elliptically that the present case involves "one of the great social and political controversies of our time"[6] and that the case affects "every public employer that operates under the Public Employee Trust Fund" and "potentially, every employer governed by Wisconsin's Family and Medical Leave Act."[7] The dissent also identifies the instant action as part of the American Civil Liberties Union's National Lesbian and Gay Rights Project.[8] The dissent is certainly mindful that any reference to the ACLU stirs up partisan passions. See

[5] *Id.*, ¶ 154.
[6] *Id.*
[7] *Id.*, ¶ 3.
[8] *Id.*

11

George H.W. Bush's criticism of presidential candidate Michael Dukakis as a "card-carrying member of the ACLU."[9]

¶ 12. Although musing that "[i]t can be argued that courts exist for the very purpose of vindicating 'rights' that might otherwise be disregarded by political majorities,"[10] the dissent in effect undermines the legitimacy of court decisions that review the constitutionality of legislative enactments.[11] The dissent's thesis appears to be, in contrast to the Code of Judicial Conduct, that courts should not determine as a matter of constitutional law politically controversial issues raised in cases legitimately before them.[12]

¶ 13. The dissent does not present the traditional, mainstream, well-accepted view that courts in the United States are, in settling disputes brought to them, supposed to protect the rights guaranteed to each of us by the United States Constitution Bill of Rights and the Wisconsin Constitution Declaration of Rights, even when such protection may be unpopular. *Marbury v. Madison*, 5 U.S. 137, 180 (1803), the best-known case in American legal history (and indeed in jurisprudence across the world), announced the basic tenet of judicial

---

[9] *The Presidential Debate; Transcript of the First TV Debate Between Bush and Dukakis*, N.Y. Times, Sept. 26, 1988, http://query.nytimes.com/gst/fullpage.html?res=940DEFD9113 EF935A1575AC0A96E948260&sec=&spon=&pagewanted=1 (last visited Jan. 29, 2008).

[10] Dissent, ¶ 191.

[11] *Id.*, ¶¶ 155, 190.

[12] *Id.*, ¶¶ 155, 190–91.

In contrast, the Wisconsin Code of Judicial Conduct, SCR 60.04(1)(b), explains that "[a] judge shall be faithful to the law and maintain professional competence in it. A judge may not be swayed by partisan interests, public clamor or fear of criticism."

review, namely that courts have the power and duty to hold that "a law repugnant to the Constitution is void."

¶ 14.　Finally, the fifth paragraph of the dissent contrives to raise the specter of abortion, questioning the legitimacy of *Roe v. Wade*, 410 U.S. 113 (1973), the United States Supreme Court's decision on abortion.[13] Abortion? Hard to believe that abortion has found its way into the instant case![14]

¶ 15.　The only issue the dissent hasn't brought in to rile up as many readers as possible is, as far as we can tell, the issue of immigration.

¶ 16.　Unfortunately, the dissent encourages the reader to confuse the legislative function, which determines public policy in a forum open to all and not governed by court rules of evidence, and the judicial function, which resolves a legal dispute between named parties according to the facts and law (including rules of evidence) in a fair, neutral, impartial, and nonpartisan way.

¶ 17.　As United States Supreme Court Chief Justice John Roberts has stated, a judge's job is like an umpire's, "to call balls and strikes and not to pitch or

---

[13] Dissent, ¶ 155.

[14] In an attempt to arouse the "homer" sentiments of a Wisconsin reader, the dissent complains about the state employees' perfectly lawful decision to retain out-of-state counsel, inexplicably suggesting that the question whether the state employees' counsel may appear before the Wisconsin courts somehow has bearing upon the question whether the municipalities have a right of intervention under Wis. Stat. § 803.09(1). Dissent, ¶ 212.

The dissent also raises other wedge issues: state government versus local government, taxes, statutory revenue and levy limits, and increased costs of local government. Dissent, ¶¶ 189, 190, 205.

bat,"[15] to make calls according to the rules, not according to the voices of a partisan crowd.

¶ 18. Without support in the facts or law on intervention and joinder, the dissent has unfortunately turned to political considerations and appeals to emotions.

¶ 19. We turn now to the procedural issues before us and the facts and law governing intervention and joinder.

¶ 20. Our painstaking and thorough consideration of the municipalities' and the state employees' numerous arguments has resulted in a very long opinion. To assist the reader, we set out the following roadmap to our discussion:

I. Factual and Procedural Background: ¶¶ 21–34

II. The Municipalities Do Not Have the Right to Intervene: Wis. Stat. § 803.09(1): ¶¶ 35–120

 A. Motion to Intervene is Timely: ¶ 42

 B. The Municipalities' Interests Are Insufficiently Related to the Subject of the Action: ¶¶ 43–74

 (1) The Financial Interest of Three Municipalities in DETF Health Plans Is Not Direct, Immediate, or Special: ¶¶ 47–53

 (2) The Municipalities' Collective Bargaining Agreements Are Not at Stake: ¶¶ 54–58

---

[15] *Roberts: "My job is to call balls and strikes and not to pitch or bat"*, CNN.com, Sept. 12, 2005, http://www.cnn.com/2005/POLITICS/09/12/roberts.statement/index.html (last visited Jan. 29, 2008).

(3) The Municipalities' Pension and Deferred Compensation Plans Are Not at Stake: ¶¶ 59–66

(4) The Municipalities' Home Rule Authority Is Not at Stake: ¶¶ 67–69

(5) Summary: ¶¶ 70–74

C. Disposition of the Action Does Not Impair the Municipalities' Ability to Protect Their Interests: ¶¶ 75–84

D. The Municipalities Are Adequately Represented by DETF and the Attorney General in the Action: ¶¶ 85–114

E. Summary: ¶¶ 115–118

III. The Circuit Court Did Not Err in Denying Permissive Intervention: ¶¶ 119–127

IV. Joinder is Not Required: ¶¶ 128–143

A. Wis. Stat. § 803.03(1)(b)1.: ¶¶ 129–137

B. Wis. Stat. § 806.04(11): ¶¶ 138–143

Conclusion: ¶¶ 144–145

## I. Factual and Procedural Background

¶ 21. The facts and procedural background may be simply stated.

¶ 22. Jody Helgeland and five other current or former state employees, along with their same-sex domestic partners (collectively "Helgeland"), brought suit against DETF, DETF Secretary Eric Stanchfield, the Employee Trust Funds Board, and the Group Insurance Board (collectively "DETF"). Helgeland challenges the constitutionality of Wis. Stat. § 40.02(20)

15

(2003–04),[16] which defines "dependent" for purposes of state employee health insurance eligibility, and alternatively asserts that DETF's interpretation and administration of this provision are unconstitutional.[17] Helgeland argues that in applying the provision's definition of "dependent," DETF violated the equal protection guarantees of Article I, Section 1 of the Wisconsin Constitution[18] by denying gay male and lesbian employees and their same-sex domestic partners the employment benefits of health insurance, sick leave carryover, and family leave that are available to similarly situated heterosexual employees and their spouses. In the amended complaint, Helgeland requests, among other things, that the circuit court enjoin DETF from excluding lesbian and gay male employees and their same-sex domestic partners from the same employment benefits provided to similarly situated heterosexual employees and their spouses.

¶ 23. Eight municipalities seek to participate as parties in Helgeland's law suit. Judgment in favor of Helgeland could not possibly impose an award of damages against any person or entity other than the named defendants.

---

[16] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[17] Helgeland also challenges the constitutionality of Wis. Stat. § 103.10, which defines those family members with a serious health condition for whom an employee may take family leave. This aspect of Helgeland's action is not relevant to the municipalities' motion.

[18] Article I, Section 1 of the Wisconsin Constitution provides in full: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

¶ 24. Each municipality involved in the instant suit offers health and dental benefit plans to its employees and pays all or some premium costs on behalf of employees who enroll in these plans.[19] The Town of Cottage Grove, the City of Watertown, and the Village of Oostburg each pay premium costs on behalf of employees who enroll in health or dental plans administered by DETF. The remaining municipalities apparently arrange for their employees' health or dental benefits without utilizing any DETF plan.

¶ 25. Employees of the Town of Cottage Grove, the City of Watertown, and the Village of Oostburg who enroll in health or dental plans administered by DETF are given the option of obtaining either "family" or "single" coverage. The "family" option provides coverage to employees and to employees' spouses and dependents.

¶ 26. All eight municipalities participate in the Wisconsin Retirement System, which is administered by DETF. A number of municipalities also sponsor the DETF-administered Wisconsin Deferred Compensation plan. The municipalities pay no contributions on behalf of employees participating in the Wisconsin Deferred Compensation plan.

¶ 27. DETF is represented by the Wisconsin Department of Justice. Peggy Lautenschlager served as Attorney General of the State of Wisconsin while both the circuit court and the court of appeals considered the municipalities' motion. Subsequent to the court of appeals' decision, Lautenschlager completed her term as attorney general and was replaced by the newly elected J.B. Van Hollen.

---

[19] The School District of New Berlin states in its affidavit that it also offers vision insurance to its employees.

¶ 28. DETF has moved for judgment against Helgeland on the pleadings before the circuit court on the ground that *Phillips v. Wisconsin Personnel Commission*, 167 Wis. 2d 205, 482 N.W.2d 121 (Ct. App. 1992), forecloses Helgeland's claim.

¶ 29. Helgeland has moved to compel discovery.

¶ 30. The circuit court has not ruled on either DETF's motion for judgment on the pleadings or Helgeland's motion to compel discovery, but has ruled only on the municipalities' motion to participate as parties. The circuit court denied the municipalities' motion to intervene, as a matter of right or by permissive intervention, in the declaratory action brought by Helgeland.

¶ 31. The circuit court also rejected the municipalities' request to be added by the court sua sponte as a necessary party. The circuit court ruled that the municipalities' interests are indirect, hypothetical, and somewhat speculative.

¶ 32. The circuit court invited the municipalities to participate as amicus curiae.[20]

---

[20] Amicus curiae (friend of the court) refers to a procedure whereby a court "may be informed by persons not parties to a legal action, who are nonetheless particularly informed or interested in the outcome (or at least in the law being declared)." Arthur Allen Leff, *The Leff Dictionary of Law: A Fragment*, 94 Yale L. J. 1855, 2012 (1985). Briefs by amicus curiae can provide assistance to a court by presenting an argument or citing authority not found in the parties' briefs or by providing important technical or background information which the parties have not supplied. *See* Joseph D. Kearney et al., *The Influence of Amicus Curiae Briefs on the Supreme Court*, 148 U. Penn. L. Rev. 743, 745 (2000). For a discussion of amicus briefs, see Neal Nettesheim et al., *Friend of the Court Briefs: What the Curiae Wants in an Amicus*, Wis. Lawyer, May 2007, at 11.

¶ 33. The municipalities contend (1) that they have a right of intervention under Wis. Stat. § 803.09(1) as a matter of law; (2) that the circuit court erroneously exercised its discretion in denying the municipalities permissive intervention under Wis. Stat. § 803.09(2); and (3) that the circuit court erred in refusing to join the municipalities sua sponte under either Wis. Stat. § 803.03(1)(b)1. or § 806.04(11).

¶ 34. We agree with the circuit court and court of appeals: the municipalities' arguments are unpersuasive. We conclude (1) that the municipalities have no right of intervention under Wis. Stat. § 803.09(1); (2) that the circuit court properly exercised its discretion in denying the municipalities permissive intervention under Wis. Stat. § 803.09(2); and (3) that the circuit court did not err in refusing to join the municipalities sua sponte under either Wis. Stat. § 803.03(1)(b)1. or § 806.04(11). Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order denying intervention or joinder.

## II. The Municipalities Do Not Have a Right to Intervene: Wis. Stat. § 803.09(1)

¶ 35. We first consider whether the circuit court erred in denying the municipalities' motion for intervention as of right under Wis. Stat. § 803.09(1).

¶ 36. Wisconsin Stat. § 803.09(1), governing intervention as of right, provides as follows:

Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

19

¶ 37. Wisconsin Stat. § 803.09(1) is based on Rule 24(a)(2) of the Federal Rules of Civil Procedure, and interpretation and application of the federal rule provide guidance in interpreting and applying § 803.09(1).[21]

¶ 38. A movant must satisfy four requirements to intervene as a matter of right under Wis. Stat. § 803.09(1). The movant must show:

(A) that the movant's motion to intervene is timely;

(B) that the movant claims an interest sufficiently related to the subject of the action;[22]

(C) that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and

---

[21] *Fox v. DHSS*, 112 Wis. 2d 514, 536, 334 N.W.2d 532 (1983).

[22] The word "sufficiently" has been a part of our interest test since at least 1983. *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 547, 334 N.W.2d 252 (1983) ("The question remains whether the [movant's] legally protected interest is sufficiently related to the transaction which is the subject of the action to justify the [movant's] intervention in this case as a matter of right."). *See also Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 472, 516 N.W.2d 357 (1994) ("In determining whether [the movant] claims an interest relating to the transaction which is the subject of the action, we must determine whether [the movant] has an interest 'sufficiently related' to Armada's mandamus action.") (citing and quoting *Bilder*, 112 Wis. 2d at 547).

The word "sufficient" is also part of the federal rule. *See* 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1908.1 at 300 (2007) (entitled "*Intervention . . . What Constitutes a Sufficient Interest*").

For a different phrasing of the rule, see *City of Madison v. WERC*, 2000 WI 39, ¶ 11 n.9, 234 Wis. 2d 550, 610 N.W.2d 94 ("The interest which entitles one to intervene in a suit between other parties must be an interest of such direct and immediate

(D) that the existing parties do not adequately represent the movant's interest.[23]

¶ 39. A movant must meet each of these four criteria to claim a right of intervention.[24] At the same time, the criteria need not be analyzed in isolation from one another,[25] and a movant's strong showing with respect to one requirement may contribute to the

character that the intervenor will either gain or lose by direct operation of the judgment.") (quotation marks and citation omitted).

[23] *See City of Madison*, 234 Wis. 2d 550, ¶ 11 (footnotes and quotation marks omitted) (citing *Armada Broad.*, 183 Wis. 2d at 471. *See also Heartwood, Inc. v. U.S. Forest Service, Inc.*, 316 F.3d 694, 700 (7th Cir. 2003).

[24] *See Armada Broad.*, 183 Wis. 2d at 471–76 ("setting forth the four requirements for intervention as of right . . . ," declaring that the movant would have a right of intervention "if he meets each of the requirements," and considering the four requirements seriatim). *See also* 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.03[1][a], at 24–23 (3d ed. 2002) ("In the absence of statutory authority granting a right to intervene, an applicant must make a timely application and satisfy all three of the [other] criteria in order to qualify for intervention of right" under Fed. R. Civ. P. 24(a)(2) (cross-references omitted); "[f]ailure to satisfy any one of the criteria justifies denial of the application to intervene.").

[25] For example, the nature of the interest claimed by a movant may be important to the question whether an existing party can adequately represent that interest. *See, e.g., Armada Broad.*, 183 Wis. 2d at 471–76 (considering the intensely "personal nature of the interests" demonstrated by the movant as one factor establishing that the movant's interests were not represented by existing parties). As a further example, the nature of the relationship between a movant's interests and the subject of the action into which the movant seeks to intervene may have bearing upon whether the movant is able to meet the "impairment" prong of the test for intervention as of right.

movant's ability to meet other requirements as well.[26] We shall discuss each of these four requirements separately, but there is interplay between the requirements; the requirements must be blended and balanced to determine whether the municipalities have the right to intervene.[27]

■

¶ 40. "Courts have no precise formula for determining whether a potential intervenor meets the requirements of § 803.09(1) . . . ."[28] The analysis is holistic,[29] flexible, and highly fact-specific.[30] A court must look at the facts and circumstances of each case "against

---

[26] *See* 6 Moore, *supra* note 24, § 24.03[1][b], at 24–25 ("[A] lesser showing of impairment may be required by the court if the applicant's interest is very strong. Likewise, intervention of right may be granted if the applicant's claimed interest may be significantly impaired by the action, even if some uncertainty exists regarding the sufficiency of that interest.") (footnote omitted).

[27] *See* 6 Moore, *supra* note 24, § 24.03[1][b], at 24–25; 7C Wright et al., *supra* note 22, § 1908, at 297.

[28] *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 742, 601 N.W.2d 301 (Ct. App. 1999). *See also* 6 Moore, *supra* note 24, § 24.03[1][b], at 24–25 ("The inquiry under Rule 24(a)(2) must focus on the particular facts and procedural posture of each application.") (footnote omitted); 7C Wright et al., *supra* note 22, § 1908.1, at 300; *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998) (concluding that no fact "pattern . . . will easily support or defeat intervention in all circumstances" and that "the variety of factual situations and their resolution demonstrate [the Court of Appeals for the Third Circuit's] adherence to the elasticity that Rule 24 contemplates . . . .").

[29] *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113–14 (1st Cir. 1999).

[30] Citing and quoting *City of Madison*, 234 Wis. 2d 550, ¶ 11 n.11, the court of appeals concluded that it should "allow intervention as a matter of right only where the intervenor is

the background of the policies underlying the intervention rule."[31] A court is mindful that Wis. Stat. § 803.03(1) "attempts to strike a balance between two conflicting public policies."[32] On the one hand, "[t]he original parties to a lawsuit should be allowed to conduct and conclude their own lawsuit . . . ."[33] On the other hand, "persons should be allowed to join a lawsuit in the interest of the speedy and economical resolution of controversies."[34]

¶ 41. Whether to allow or to deny intervention as of right is a question of law that this court decides independently of the circuit court and court of appeals but benefiting from the analyses of each court.[35] One federal court concluded: "Despite its nomenclature, intervention 'as of right' usually turns on judgment calls

'necessary to the adjudication of the action.'" *Helgeland*, 296 Wis. 2d 880, ¶ 6. At the municipalities' urging, we clarify that a rigid test for intervention as of right was not established in *City of Madison*, 234 Wis. 2d 550, ¶ 11, n.11 (citation omitted), in which the court stated that intervention as a matter of right requires that a person be in some sense "necessary to the adjudication of the action." *City of Madison* should not be interpreted to indicate a departure from our flexible and pragmatic approach to intervention as of right, nor to contradict the text of Wis. Stat. § 803.09(1), which provides that a right of intervention can exist even where the movant shows that disposition of the action "may as a practical matter impair or impede the movant's ability" to protect some interest, as opposed to showing that impairment or impediment will necessarily occur.

[31] *Bilder*, 112 Wis. 2d at 549.

[32] *Id.* at 548.

[33] *Id.*

[34] *Id.*

[35] *Armada Broad.*, 183 Wis. 2d at 470 (citing *Bilder*, 112 Wis. 2d at 549.

23

and fact assessments that a reviewing court is unlikely to disturb except for clear mistakes."[36]

## A. Motion to Intervene Is Timely

¶ 42. The question of the timeliness of a motion to intervene is left to the discretion of the circuit court.[37] Neither Helgeland nor DETF disputes that the municipalities timely moved to intervene. We agree with the parties that the municipalities satisfied the first requirement of Wis. Stat. § 803.09(1).

## B. The Municipalities' Interests Are Insufficiently Related to the Subject of the Action

¶ 43. No precise test exists "for determining which type of interest is sufficient to allow a party to intervene as a matter of right."[38] The "interest" requirement is nebulous; courts have not been able to develop more than general guidelines.[39] Instead of a precise test, courts employ a "broader, pragmatic approach to intervention as of right," viewing "the interest sufficient to allow the intervention practically rather than technically."[40] As the municipalities' brief recognizes, the

---

[36] *Daggett*, 172 F.3d at 113.

[37] *City of Madison*, 234 Wis. 2d 550, ¶ 11 n.10.

[38] *Bilder*, 112 Wis. 2d at 547. *See also Security Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995) ("The 'interest' required by Rule 24(a)(2) has never been defined with particular precision."); 6 Moore, *supra* note 24, § 24.03[2][a], at 24–28 ("[T]here is no authoritative definition of precisely what kinds of interest satisfy the requirements of" Rule 24(a)(2).).

[39] *Harris v. Pernsley*, 820 F.2d 592, 596–97 (3d Cir. 1987).

[40] *Bilder*, 112 Wis. 2d at 548. *Bilder* may, however, be interpreted to require that an interest at least be "legally protected." *See id.* at 546–47.

interest requirement has generated a spectrum of approaches.

¶ 44. We thus approach the second requirement of Wis. Stat. § 803.09(1) with the same flexibility that we bring to the statute as a whole, measuring "the sufficiency of the interest by focusing on the facts and circumstances of the particular case before [us] as well as the stated interest in intervention" and analyzing "these factors against the policies underlying the intervention statute,"[41] namely to strike a balance between allowing the original parties to a lawsuit to conduct and conclude their own lawsuit and allowing persons to join a lawsuit in the interest of the speedy and economical resolution of controversies without rendering the lawsuit fruitlessly complex or unending. We treat "the interest test as primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[42]

¶ 45. At the same time, a claimed interest does not support intervention if it is only remotely related to the subject of the action.[43] There must be some sense in which the interest is "of such direct and immediate character that the intervenor will either gain or lose by the direct operation of the judgment."[44] A movant may

---

[41] *Bilder*, 112 Wis. 2d at 548.

[42] *Id.* at 548–49 (internal quotation marks and citation omitted).

[43] *See* 6 Moore, *supra* note 24, § 24.03[2][b], at 24–29 ("[I]nterests that are remote from the subject matter of the proceeding plainly do not satisfy the interest requirement of Rule 24(a).").

[44] *City of Madison*, 234 Wis. 2d 550, ¶ 11 n.9 (quoting *Lodge 78, Int'l Ass'n of Machinists v. Nickel*, 20 Wis. 2d 42, 46, 121 N.W.2d 297 (1963)).

intervene as of right when the movant needs "to protect a right that would not otherwise be protected in the litigation."[45]

¶ 46. The subject of the present action is the constitutionality of Wis. Stat. § 40.02(20), which defines "dependent" for purposes of state employee health insurance eligibility. Although the municipalities' employees are not involved in the subject of the action so defined, the municipalities put forth a number of interests and assert that each is sufficiently related to the subject of the action to allow intervention as of right.[46] They argue that they meet the interest requirement for the following reasons: (1) three municipalities (Cottage Grove, Watertown, and Oostburg) would have to pay increased premiums on behalf of municipal employees enrolled in DETF health or dental plans should Helgeland prevail; (2) the collective bargaining agreements of all eight municipalities would be affected should Helgeland prevail, because employees' spouses are covered under the agreements but employees' same-sex domestic partners are not; (3) most of the municipalities participate in or sponsor the Wisconsin Retirement System qualified plan and the Wisconsin Deferred Compensation Program (both administered by DETF) that would be adversely affected should Helgeland prevail; and (4) the municipalities' home rule authority over their local affairs and government would be adversely affected by Helgeland's action. We discuss each argument in turn.

[45] *City of Madison*, 234 Wis. 2d 550, ¶ 11 n.8 (quoting *White House Milk Co. v. Thomson*, 275 Wis. 243, 249, 81 N.W.2d 725 (1957)).

[46] In *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 601 N.W.2d 301 (Ct. App. 1999), the court of appeals concluded that the movant need not demonstrate it has a judicially enforceable right to challenge a decision in order to intervene in the action.

(1) The Financial Interest of Three Municipalities in DETF Health Plans Is Not Direct, Immediate, or Special

¶ 47. We first consider the municipalities' argument that three of the eight municipalities' financial interest in their employees' DETF health benefit plans is an interest sufficiently related to the subject of Helgeland's action.

¶ 48. Cottage Grove, Watertown, and Oostburg each pay premium costs on behalf of employees who enroll in health or dental plans administered by DETF pursuant to collective bargaining agreements. The municipalities argue that including same-sex domestic partners in the plan could impose additional costs on municipal employers.[47] The municipalities therefore assert a financial interest that they claim is directly related to the subject of Helgeland's action.[48]

¶ 49. The court of appeals voiced some agreement with this portion of the municipalities' argument. While not reaching a definitive conclusion on the matter, the court of appeals conceded that "[i]t appears likely

_____

[47] According to the affidavits, however, all six employees of the Village of Oostburg are already enrolled in a DETF plan offering family coverage, and the Village appears not to be affected by the instant action.

The affidavits for Cottage Grove, Watertown, and Oostburg each indicate that employees eligible to enroll in DETF plans have only two coverage options: "family" and "single." The affidavits further indicate that the price of the "family" coverage plans does not vary depending on the number of persons other than the employee who are covered by the plan.

[48] The municipalities assert that should Helgeland prevail, DETF would be required to amend the very plans in which employees of Cottage Grove, Watertown, and Oostburg are enrolled.

27

that . . . Cottage Grove, Watertown, and Oostburg[] may have interests sufficiently related to the declaratory action by virtue of being enrolled in the DETF health plans."[49] The court of appeals reasoned that "[a] decision affecting the applicability of Wis. Stat. § 40.02 . . . to same-sex domestic partners of state employees could directly affect these Municipalities in the administration of their health plans pursuant to these statutes, because a judgment in Helgeland's favor would likely increase the amount of benefits these Municipalities would be required to pay."[50] The court of appeals concluded, however, that the remaining five municipalities do not have sufficient interests because they are parties only to DETF pension plans, which Helgeland did not directly challenge.[51]

¶ 50. Helgeland and DETF respond, arguing that municipal employees' plans, including plans administered by DETF, are in no way the subject of Helgeland's action and that any judgment in favor of Helgeland would apply solely to DETF plans offered to state employees. Helgeland and DETF point to Wis. Stat. § 40.51(7), which provides that DETF may establish different eligibility standards for nonstate employees

---

[49] *Helgeland*, 296 Wis. 2d 880, ¶ 19.

[50] *Id.*

[51] *Id.*, ¶ 19 n.13.

The municipalities disagree with the court of appeals' limited interpretation of the complaint; they assert that the remedies Helgeland seeks apply to all DETF plans (including pension and deferred compensation plans in which all eight municipalities are enrolled) and that all the municipalities therefore have an interest in Helgeland's action.

We address the municipalities' arguments regarding DETF-administered pension and deferred compensation plans below.

participating in DETF plans. According to Helgeland and DETF, judgment in favor of Helgeland does not directly affect the municipalities.

¶ 51. The municipalities make an additional argument. They charge that Helgeland has deliberately designed her action to gain "a tactical advantage" by excluding the municipalities from the litigation through "shrewd pleading" and "cherry picking."

¶ 52. The municipalities seem to be arguing that when challenging the constitutionality of state conduct, Helgeland is obligated to name as defendants any conceivable state or municipal entity that may be engaging in the conduct challenged. No such requirement exists in the law.

¶ 53. We need not decide the legal issue of the effect of a judgment in the present case on the municipalities; under the practical standard we apply in interpreting and applying Wis. Stat. § 803.09(1), whether municipal employees' DETF plans are the exact plans considered in the action is not dispositive. A relationship may exist between the plans that DETF offers to state employees and the DETF plans offered to the municipalities' employees. The relationship between the municipalities' interest and the subject of Helgeland's action is, however, too remote and speculative to support a right of intervention.[52]

---

[52] *Contra Zabel v. Zabel*, 210 Wis. 2d 336, 565 N.W.2d 240 (Ct. App. 1997), in which the court of appeals, in a joinder case, concluded that the joinder of a husband's mother as a third-party defendant in a divorce action was necessary for a just and complete adjudication of the parties' material property rights when the wife alleged that certain real property titled in her mother-in-law's name was marital property and therefore subject to division as part of the divorce.

(2) The Municipalities' Collective Bargaining Agreements Are Not at Stake

¶ 54. The municipalities' second claimed interest is that their collective bargaining agreements will be affected by Helgeland's action. They argue that this interest alone is sufficient to require intervention. We do not agree with the municipalities' statement of the law.

¶ 55. The municipalities cite a number of cases as "overwhelming" support for the position that a government or private entity has a right of intervention whenever a judgment may modify an agreement to which the entity is party.

¶ 56. These cases do not provide the support that the municipalities seek. Four of the cases cited simply do not consider the question of intervention.[53] In a fifth case, a federal district court granted permissive intervention under Rule 24(b)(2) of the Federal Rules of Civil Procedure but did not reach the question of intervention as of right under Rule 24(a)(2).[54] In sixth case, a federal district court denied a motion to

---

[53] *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977) (considering whether a state's statutory repeal of its covenant with another state was void under the Art. I, § 10, cl.1, Contract Clause of the United States Constitution); *United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998) (affirming the district court's refusal to approve a consent decree over an intervenor's objection but not reviewing the district court's decision to permit intervention); *Linton v. Comm'r of Health & Env't*, 30 F.3d 55 (6th Cir. 1994) (considering whether an intervenor had standing to appeal the district court's decision but not reviewing the grant of intervention); *In re Allied Supermarkets, Inc.*, 1980 U.S. Dist. LEXIS 13500 (E.D. Mich. 1980) (interpreting the bankruptcy code to permit a debtor to disaffirm a collective bargaining agreement).

[54] *Cox Cable Commc'ns, Inc. v. United States*, 699 F. Supp. 917 (M.D. Ga. 1988).

intervene on grounds that the movant could not meet the interest requirement of Rule 24(a)(2).[55]

¶ 57. Only one case that the municipalities cite lends any aid to their argument. In *EEOC v. AT&T*, 506 F.2d 735, 741–42 (3d Cir. 1974), the Court of Appeals for the Third Circuit ruled that a movant union had the right to intervene as party defendant to oppose a consent decree that could modify or invalidate provisions in the union's collective bargaining agreement with defendant AT&T. The *EEOC* court did not, however, establish a general rule that a person may always claim an interest supporting intervention as of right when judgment in an action may leave the person unable to enforce rights under an agreement to which it is party.[56]

¶ 58. Although no judgment for Helgeland as a state employee would directly bind the municipalities, on a practical level—the level at which our analysis must focus—the municipalities arguably may be affected if a judgment is entered against DETF. Accordingly, the municipalities are concerned about the effect of stare decisis upon them. As we explain below, although the effect of stare decisis is a consideration in determining intervention as of right, it is not determinative.

---

[55] *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 696 F. Supp. 57, 96 (D. Del. 1988).

[56] *EEOC* is further distinguishable from the instant case in that the consent decree at issue in *EEOC* threatened directly to modify or invalidate parts of a collective bargaining agreement that the movant union had negotiated with a party defendant that would be bound by judgment in the action. *EEOC v. AT&T*, 506 F.2d 735, 741 (3d Cir. 1974). In this case, the municipalities do not claim contractual rights against DETF or any other party to the action.

### (3) The Municipalities' Pension and Deferred Compensation Plans Are Not at Stake

¶ 59. Thirdly, the municipalities allege that their interests in both the Wisconsin Retirement System and the Wisconsin Deferred Compensation Program (both administered by DETF) are at stake in the action. The court of appeals refused to consider the municipalities' arguments regarding pension benefits on grounds that Helgeland's complaint made no reference to pension plans.[57] Applying our practical standard, we examine the relation of the municipalities' interests in the retirement and deferred compensation plans to the present action.

¶ 60. The municipalities explain the relationship between their interest in the retirement and deferred compensation plans and Helgeland's action as follows: Although employees are free to designate any pension or deferred compensation beneficiary they wish, Wisconsin law provides that employees' "spouses" have specific rights to those benefits under qualified domestic relations orders. A qualified domestic relations order divides the participant's pension and deferred compensation benefits at divorce between the participant and the former spouse.[58]

¶ 61. The municipalities argue that because Helgeland asks that the court classify "same-sex domestic partners of state employees as dependents for purposes of participation in *all* employee benefit contracts and plans . . ."[59] and because the Wisconsin Retirement Sys-

---

[57] *Helgeland*, 296 Wis. 2d 880, ¶ 18.

[58] In support of this position, the municipalities cite Wis. Stat. §§ 40.02(48m) and 40.24(7)(a), as well as Wis. Admin. Code ETF § 20.055 (Jan. 2004).

[59] Petr.'s Br. 42 (quoting Plaintiffs' Amended Complaint at 31).

tem and Wisconsin Deferred Compensation Program are administered by DETF, any judgment in favor of Helgeland will necessarily entail that DETF be compelled to permit a participant's former same-sex domestic partner to seek a qualified domestic relations order dividing the participant's benefits between the participant and the former same-sex domestic partner.

¶ 62. The municipalities further argue that such a remedy would jeopardize the tax-exempt or tax-deferred status of these plans if a former same-sex domestic partner were, like a spouse, permitted to obtain a qualified domestic relations order dividing a participant's benefits between the participant and the former same-sex domestic partner. The municipalities surmise that by allocating such a right to former same-sex domestic partners, DETF would in some way render the plans inconsistent with the federal Defense of Marriage Act, which provides that in determining the meaning of any federal statute or regulation, the word "marriage" means only a legal union between one man and one woman as husband and wife and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife. The municipalities cite two IRS private letter rulings that the municipalities claim support their reading of federal law.[60]

¶ 63. The municipalities' arguments on federal law are extremely weak. Life insurance policies, deferred compensation plans, retirement plans, and pension plans administered by DETF already permit par-

[60] *See* I.R.S. Priv. Ltr. Rul. 200524016 (June 17, 2005), *available at* http://www.irs.gov/pub/irs-wd/0524016.pdf; I.R.S. Priv. Ltr. Rul. 200524017 (June 17, 2005), *available at* http://www.irs.gov/pub/irs-wd/0524017.pdf.

ticipants to name beneficiaries of their choice.[61] Private letter rulings, as the municipalities themselves acknowledge, have no precedential value. Furthermore, the private letter rulings do not necessarily support the municipalities' position.

¶ 64. The private letter rulings instead conclude that each plan examined "is an eligible deferred compensation plan,"[62] while also noting that "a registered domestic partner . . . is not a spouse . . . for purposes of" the federal law and that if spousal provisions in the plans are "not interpreted and applied in a manner consistent with the Defense of Marriage Act, the operation of [the plans]" would not comply with federal law.[63] The private letter rulings do not explain whether an interpretation or application of a plan's spousal provisions would be inconsistent with the Defense of Marriage Act if, pursuant to state law, the plan provided the same benefits to registered domestic partners that it provides to spouses.

¶ 65. Lastly, the municipalities' argument depends upon an interpretation of the Defense of Marriage Act, which defines the word "spouse." The only word at which Helgeland takes aim is, however, the word "dependent" in the state statute. The municipalities offer no reason to conclude that a judgment in favor of Helgeland interpreting the word "dependent" might entail interpretation of the word "spouse" as well.

¶ 66. The municipalities' arguments about federal law are based on "likely scenarios" and speculation about

---

[61] *See, e.g.*, Wis. Stat. § 40.02(8)(a).

[62] I.R.S. Priv. Ltr. Rul. 200524016, at 10; I.R.S. Priv. Ltr. Rul. 200524017, at 9.

[63] I.R.S. Priv. Ltr. Rul. 200524016, at 10; I.R.S. Priv. Ltr. Rul. 200524017, at 9.

the effect of Helgeland's action on the tax status of the retirement and deferred compensation plans and application of the Defense of Marriage Act (DOMA), the Employee Retirement Income Security Act of 1974 (ERISA), and the Comprehensive Omnibus Budget Reconciliation Act (COBRA). The municipalities spin an argument but cite no examples or case law illustrating the dire consequences they predict. In contrast, numerous governmental entities now grant employees domestic partner benefits and retain federal tax benefits and apparently do not run afoul of federal laws.

(4) The Municipalities' Home Rule Authority Is Not at Stake

¶ 67. We turn finally to the municipalities' contention that judgment for Helgeland would deprive the municipalities of constitutional and statutory home rule powers.[64] The municipalities suggest that Helge-

---

[64] The home rule amendment to the Wisconsin Constitution, Article XI, Section 3(1), provides in relevant part that "[c]ities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. . . . ").

Wisconsin's home rule statute further provides that

[e]xcept as elsewhere in the statutes specifically provided, the [municipal] council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. . . .

Wis. Stat. § 62.11(5).

land threatens the municipalities' authority to hire personnel and negotiate employment contracts, to negotiate collective bargaining agreements, to establish and administer benefit plans for municipal employees, and generally to determine municipal policy.

¶ 68. Helgeland's position does not threaten to deprive the municipalities of any part of their home rule powers. The municipalities apparently would have this court hold that they face deprivation of their home rule authority—and accordingly may claim an interest supporting intervention—every time a court considers whether a constitutional or statutory provision prohibits the state or municipalities from engaging in some particular form of conduct. We do not so hold. The municipalities' home rule authority is not related to the subject of Helgeland's action.

■■■

¶ 69. That a judgment for Helgeland might affect the constitutional or statutory powers of a municipality in operating health care or pension plans does not constitute a deprivation of the municipalities' home rule powers. Home rule powers are explicitly constrained by the state constitution and the statutes.[65]

(5) Summary

¶ 70. In summary, we examine all of the municipalities' arguments about their interests together and apply the broad, pragmatic approach to intervention as

---

[65] *See* Wis. Const. art. XI, § 3(1) (granting home rule powers "subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village"); Wis. Stat. § 62.11(5) (granting home rule powers "[e]xcept as elsewhere in the statutes specifically provided").

of right required by Wis. Stat. § 803.09(1). We determine whether the municipalities' interests are sufficient to allow the intervention practically rather than technically and examine the interest factor in relation to the other factors to decide whether to allow intervention as of right. We balance the right of the original parties to conduct their own lawsuit with allowing others to join the lawsuit in the interest of speedy and economical resolution of the controversy.

¶ 71. Although the municipalities claim that they have interests related to the subject of Helgeland's action, they have failed to show in the circuit court or here how their interests relate to the subject of the action in a direct and immediate fashion. Furthermore, the municipalities' interest in the present case is not a unique or special interest but rather, as Justice Butler's concurrence demonstrates, one that other municipalities or other entities or individuals could claim in almost any action challenging the constitutionality of a state statute, or that any employer could claim when an action before a court affects a similar contract or threatens to increase costs that employers are obligated to pay on behalf of their employees.[66] When the interests of a movant are substantially similar to those of a party, as the municipalities claim, it is more difficult for the movant to demonstrate that it is not adequately

---

[66] *Cf. Armada Broad.*, 183 Wis. 2d at 474, 476 (movant had a "unique" and "personal" interest in persuading the court that a report containing speculative and uncorroborated information about the movant should remain closed to the public); *Wolff*, 229 Wis. 2d at 746 (movant town's unique statutory responsibility to provide fire protection services to plaintiff and plaintiff's property was implicated in plaintiff's action to develop a rugged and difficult-to-reach tract of land for residential use).

represented by the party.[67] The municipalities' interests do diverge from DETF's. The municipalities' interest is in the employees covered by their own plans, not in the state employees who have brought the action. Furthermore, the municipalities' interest in the outcome is more attenuated than the State's. The municipalities, unlike the State, would not be subject to immediate potential damages as well as costs to the taxpayers should the court ultimately rule in Helgeland's favor.

¶ 72. The municipalities cite no case holding that a movant meets the interest requirement of either Wis. Stat. § 803.09(1) or Rule 24(a)(2) of the Federal Rules of Civil Procedure merely when it engages in, and wishes to continue engaging in, conduct identical to another's conduct challenged on constitutional grounds but governed by a different contract. The municipalities also adduce no precedent recognizing a right of intervention based on a widely shared financial interest such as presented in the instant case. Many entities may be concerned with Helgeland's action, but involving them as intervenors as of right is not likely to be compatible with efficiency and would not contribute to the resolution of the controversy unless the movant had a sufficiently different stake in the controversy, was not adequately represented by a party, and could make a unique contribution to the proceedings.

¶ 73. The municipalities conclude their interest argument by asserting that when, as in the present case, the claimant (Helgeland) brings public interest litigation that may change constitutional doctrine and statewide governmental practice, greater consideration

---

[67] *See, e.g., Armada Broad.*, 183 Wis. 2d at 471–76 (considering the intensely "personal nature of the interests" demonstrated by the movant as one factor establishing that the movant's interests were not represented by existing parties).

should be given for intervention by parties of differing perspectives to allow fuller development of the issues. Under this theory, any significant legal question of first impression cannot be resolved without allowing intervention by every person whose rights in a future case might be affected by the stare decisis effect of the decision. This type of free-for-all intervention could not have been contemplated by the legislature. The municipalities' reasoning is therefore flawed.

¶ 74. The municipalities' generalized interest in the subject of the instant action, namely, the constitutionality of a statute applicable to a plan for state employees, is at the far edge of what may constitute a sufficiently related interest for purposes of the right to intervene statute. The weakness of the municipalities' showing with respect to the interest requirement means that to demonstrate a right of intervention the municipalities should make a strong showing in the other requirements to intervene as of right.

C. Disposition of the Action Does Not Impair the Municipalities' Ability to Protect Their Interests

¶ 75. We now consider the third requirement to intervene as a matter of right under Wis. Stat. § 803.09(1), namely, that the disposition of Helgeland's action may, as a practical matter, impair or impede the municipalities' ability to protect interests that may be related to the subject of Helgeland's action.[68] The municipalities are not parties to any contract actually at issue in the present litigation; the municipalities' interest in excluding same-sex domestic partner coverage

---

[68] 7C Wright et al., *supra* note 22, § 1908.2, at 368 (determining whether disposition of the action will impede or impair a movant's ability to protect its interest must be put in practical terms).

therefore cannot be directly impaired by Helgeland's action.

¶ 76. The municipalities argue that the effect of stare decisis might impair or impede their ability to protect their interest in excluding same-sex domestic partner coverage. The circuit court concluded that the interests of the municipalities "while not directly involved in this lawsuit, may be impaired in some future circumstance by a decision in this litigation, through the operation of stare decisis" and that "the possible future problem arising from stare decisis" is not a sufficient basis for intervention.

¶ 77. Wisconsin courts have not considered, for purposes of intervention as a matter of right under Wis. Stat. § 803.09(1), the effect of stare decisis. We therefore turn to the federal decisions for guidance.

¶ 78. The federal courts have reached no consensus on the question under what circumstances the effect of stare decisis may constitute an impairment for purposes of Rule 24(a)(2), governing intervention as of right. In *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988), the Seventh Circuit court of appeals has declared that stare decisis effects should establish a Rule 24(a)(2) impairment "infrequently" and "only when the putative intervenor's position so depends on facts specific to the case at hand that participation as amicus curiae is inadequate to convey essential arguments to the tribunal." Other federal courts consider the effect of stare decisis on a case-by-case basis.[69]

---

[69] *See, e.g.*, *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) ("[A] stare decisis effect is an important consideration in determining the extent to which an applicant's interest may be impaired.").

¶ 79. We approach the third requirement of Wis. Stat. § 803.09(1), namely, that the disposition of Helgeland's action may, as a practical matter, impair or impede the municipalities' ability to protect interests that may be related to the subject of Helgeland's action, as we approach intervention as of right generally. We take a pragmatic approach and focus on the facts of each case and the policies underlying the intervention statute.[70] Although we examine the inability of a movant to protect its interests separately, it is part and parcel of analyzing the interest involved and determining whether an existing party adequately represents the movant's interest.

¶ 80. Two factors might be considered as weighing for or against a movant's claim that the effect of stare decisis may as a practical matter impair the movant's ability to protect a claimed interest. First, a court considers the extent to which an adverse holding in the action would apply to the movant's particular circumstances. The movant's ability to meet the impairment requirement is weakened to the extent that any future action against the movant is likely to be factually distinguishable from the action into which the movant seeks to intervene.[71]

---

[70] *See* 6 Moore, *supra* note 24, § 24.03[3][a], at 24–42 ("The practical impairment test is flexible, and its application depends on a pragmatic analysis of the circumstances of a given case . . . .").

[71] *See* 6 Moore, *supra* note 24, § 24.03[3][b], at 24–42.2 ("Recurring common law actions such as breach of contract and negligence are unlikely to achieve the practical stare decisis impairment necessary to satisfy Rule 24(a)."); *Worlds v. Dep't of Health & Rehabilitative Servs.*, 929 F.2d 591, 594 (11th Cir. 1991) (concluding that there was "little likelihood that stare decisis would leave [the potential intervenor] in a worse posi-

41

¶ 81. Second, a court considers the extent to which the action into which the movant seeks to intervene will result in a novel holding of law. The effect of stare decisis is more significant when a court decides a question of first impression.[72] Consideration of these two factors may aid a court in determining whether the impact of stare decisis may harm the movant as a practical matter.

¶ 82. DETF concedes that if judgment is entered in favor of Helgeland, "by operation of stare decisis, other government employers, such as the municipalities, would likely either have to provide for same-sex domestic partner coverage . . . or would have to forego providing family health insurance coverage to its [sic] employees entirely . . . ."[73] In oral arguments, Helgeland's counsel also conceded that the municipalities' benefit plans would be indirectly affected if this court ultimately were to agree that the definition of "dependent" provided by Wis. Stat. § 40.02(20) is unconstitutional for the reasons argued by Helgeland.

¶ 83. We agree with the municipalities that a judgment in favor of Helgeland might present a novel holding of law. Helgeland does not appear to contend that any Wisconsin court has previously held that Wis. Stat.

---

tion if he [were] not allowed to intervene" because the potential intervenor would have use of factual evidence in the future action he contemplated that was excluded from the action into which he sought to intervene).

[72] *See* 6 Moore, *supra* note 24, § 24.03[3[b], at 24–42.2 ("Stare decisis is not a relevant concern if the case does not involve the resolution of new legal issues."); *Int'l Paper Co. v. Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989) (recognizing that the adverse impact of stare decisis is especially important "where a court is deciding questions of first impression").

[73] Def.-Respt.'s Br. 9.

§ 40.02(20), or any similar statute, contravenes the constitution for the reasons that Helgeland puts forth.[74]

¶ 84. Without speculating about the precise relationship between Helgeland's present action and a hypothetical case that one of the municipalities' employees might bring against the municipalities, we acknowledge that judgment in favor of Helgeland might expose the municipalities to the adverse effect of stare decisis. However, just as the municipalities claim only a generalized interest in the subject matter of the present action, an effect of a judgment in favor of Helgeland on the municipalities is essentially the same effect that any employer might claim when an action before the court threatens to increase costs that the employer is obligated to pay on behalf of its employees, or that municipalities or other entities or individuals could claim in nearly any action challenging the constitutionality of a state statute. If stare decisis were enough of a justification for the municipalities' intervention in the present case without an unusually strong showing with respect to other re-

---

[74] In contrast, DETF argues that Helgeland's action presents a question of law already decided against Helgeland in *Phillips v. Wisconsin Personnel Commission*, 167 Wis. 2d 205, 482 N.W.2d 121 (Ct. App. 1992). DETF's brief quotes *Phillips* as follows:

> But whether to allow or disallow same sex-marriages—or even whether to allow extension of state employee health insurance benefits to companions of unmarried state employees of whatever gender or sexual orientation—is a legislative decision, not one for the courts. . . . "Creation" of verification and registration systems designed to facilitate the extension of state employee benefits to the employees' unmarried companions—and an enforcement mechanism to ensure that only stable and committed same-sex couples are eligible for such benefits—is precisely the type of action committed to the legislature, as the policymaking branch of government. It is beyond all powers of this or any other court. Def.-Respt.'s Br. 19 n.6.

quirements for intervention as of right, then constitutional litigation would, as Justice Butler's concurrence demonstrates, become unwieldy with parties intervening as a matter of right. As with the interest requirement, the municipalities' showing with respect to this third requirement is weak at best.

### D. The Municipalities Are Adequately Represented by DETF and the Attorney General in the Action

¶ 85. We turn finally to the fourth requirement of Wis. Stat. § 809.03(9), namely, that the existing parties do not adequately represent the movants' interests. As the municipalities' brief recognizes, the adequate representation requirement has generated a spectrum of approaches. The court has declared that "the showing required for proving inadequate representation 'should be treated as minimal.'"[75] The requirement, however, "cannot be treated as so minimal as to write the requirement completely out of the rule."[76]

¶ 86. Indeed, this requirement is blended and balanced with the other requirements. If a movant's interest is identical to that of one of the parties, or if a party is charged by law with representing the movant's interest, a compelling showing should be required to demonstrate that the representation is not adequate.[77] When the potential intervenor's interests are substantially

---

[75] *Armada Broad.*, 183 Wis. 2d at 476 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

[76] *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984). *See also Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) ("Although the burden of establishing inadequacy of representation may be minimal, the requirement is not without teeth . . . .").

[77] 7C Wright et al., *supra* note 22, § 1908, at 394–95 (in contrast, if the movant's interest is similar to a party's a discriminating judgment is required on the circumstances of the particular case).

similar to interests already represented by an existing party, such similarity will weigh against the potential intervenor.[78]

¶ 87. In determining whether an existing party adequately represents a movant's interest, we look to see if there is a showing of collusion between the representative and the opposing party; if the representative fails in the fulfillment of his duty; or if the representative's interest is adverse to that of the proposed intervenor.[79]

¶ 88. The municipalities do not allege any collusion between Helgeland and DETF. They do not demonstrate that the DETF's interest is adverse to theirs; and do not show that the DETF has failed in the fulfillment of its duty.

¶ 89. In considering whether DETF adequately represents the municipalities, two rebuttable presumptions come into play and work against the municipalities in the instant case.

---

[78] See 7C Wright et al., supra note 22, § 1909, at 394 ("[I]f the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be required to demonstrate why this representation is not adequate.") (footnote omitted).

[79] See Armada Broad., 183 Wis. 2d at 476 (citations omitted). See also Sewerage Comm'n of Milwaukee v. DNR, 104 Wis. 2d 182, 189, 311 N.W.2d 677 (Ct. App. 1981) (citing United States v. Board of Sch. Comm'rs, 466 F.2d 573, 575 (7th Cir. 1972)) ("Ordinarily a party's representation is deemed adequate to protect the proposed intervenor's interest if there is no showing of collusion between the representative and the opposing party; if the representative does not represent an interest adverse to that of the movant; and if the representative does not fail in the fulfillment of its duty.").

See Wolff, 229 Wis. 2d at 748 (movant's interests "need not be wholly adverse" to existing parties'; significant "differences" between movant's position and that of existing party sufficient).

**[14]**

¶ 90. First, adequate representation is ordinarily presumed when a movant and an existing party have the same ultimate objective in the action.[80] This presumption applies in the instant case because the municipalities claim no objective that DETF does not also share. Both DETF and the municipalities ask the court to uphold the constitutionality of DETF's plans and of Wis. Stat. § 40.02(20).

¶ 91. Second, "when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity."[81] This presumption applies in the

---

[80] *See, e.g., Prete v. Bradbury,* 438 F.3d 949, 956 (9th Cir. 2006) ("When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.") (quoting *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003); *Wade v. Goldschmidt,* 673 F.2d 182, 186 n.7 (7th Cir. 1982) ("[A]pplicants have not overcome the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit (especially if it is the state) have the same ultimate objective.") (citation omitted); *Daggett,* 172 F.3d at 111 ("[A]dequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant . . . .") (citations omitted).

[81] *Edwards v. City of Houston,* 78 F.3d 983, 1005 (5th Cir. 1996) (citation omitted). *See also Curry v. Regents of the Univ. of Minn.,* 167 F.3d 420, 423 (8th Cir. 1999) ("[W]hen a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed adequately to represent the interests of the public . . . ." (citation omitted); *Wade,* 673 F.2d at 186 ("[A]pplicants have not overcome the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit (especially if it is the

46

present case because, as we will discuss below, both DETF and the Department of Justice are charged by law with the duty to defend the constitutionality of Wis. Stat. § 40.02(20), the very position advocated by the municipalities, the would-be intervenor.

¶ 92. In support of their position that the DETF does not adequately represent the municipalities' interests, the municipalities argue (1) that former Attorney General Peggy Lautenschlager was not adequately committed to DETF's position in the present case; (2) that institutional features render DETF unable to defend against Helgeland's action with the same vehemence that the municipalities could provide; (3) that DETF cannot adequately represent the municipalities' interests in any remedy phase that might later occur; (4) that DETF has failed to raise defenses against Helgeland that the municipalities wish to raise; and (5) that DETF cannot adequately represent the municipalities' interests given that DETF argues that the municipalities do not meet the interest requirement of the test for intervention as of right. None of these arguments yields any showing that DETF does not adequately represent the municipalities' interests.

¶ 93. With regard to the municipalities' argument concerning former Attorney General Peggy Lautenschlager's alleged "conflicted loyalties," the municipali-

_____

state) have the same ultimate objective.") (citation omitted); *Prete*, 438 F.3d at 956 (There is "an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.") (quotation marks and citation omitted); *Daggett*, 172 F.3d at 111 ("[T]he government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute.") (citation omitted).

ties make the following allegations: (1) Lautenschlager's spokesperson criticized the legislature for attempting to intervene in this action, asserting that the dispute between Helgeland and DETF was "a matter best left up to the courts"; (2) During an October 25, 2002, debate between attorney general candidates, Lautenschlager made statements in support of civil unions for same-sex domestic couples; (3) Lautenschlager spoke at a 2005 Madison Gay Pride Rally at which two of Helgeland's co-plaintiffs and Helgeland's attorney also spoke; and (4) Lautenschlager made the "reckless" decision to move for judgment on the pleadings.

¶ 94. We spend little time on these allegations relating to Attorney General Lautenschlager's out-of-court statements. The allegations relating to the Attorney General's statements go solely to the question of Lautenschlager's personal beliefs, not to her official conduct as attorney general. We generally agree with the court of appeals' analysis relating to these statements.[82]

¶ 95. In the absence of any showing to the contrary, we must presume that Lautenschlager has fulfilled her duty as attorney general to put aside her personal and political beliefs in defending against Helgeland's action attacking the constitutionality of a statute.[83] An attorney general's statements of personal

---

[82] *See Helgeland*, 296 Wis. 2d 880, ¶¶ 26–29.

[83] *See White House Milk Co. v. Thomson*, 275 Wis. 243, 249 (1957) ("Public officers are always presumed, in the absence of any showing to the contrary, to be ready and willing to perform their duty . . . ."). The municipalities object to the court of appeals' reliance on *White House Milk*, because at the time of *White House Milk* Wisconsin's right of intervention statute

or political beliefs, without more, do not constitute a showing that the attorney general will violate the statutory duties of the office.

■■■■

¶ 96. The Attorney General of Wisconsin has the duty by statute to defend the constitutionality of state statutes.[84] Indeed, "Wis. Stat. § 806.04(11) recognizes that it is the duty of the attorney general to appear on behalf of the people of this state to show why [a] statute is constitutional,"[85] making service on the attorney general a jurisdictional matter in a declaratory action attacking the constitutionality of a statute.[86]

¶ 97. The municipalities' complaints against Attorney General Lautenschlager are, in any event, irrel-

---

differed substantially from Wis. Stat. § 803.09(1). However, like the court of appeals, we do not rely on *White House Milk* in construing Wis. Stat. § 803.09(1). The presumption that public officers will perform their duties does not depend upon Wis. Stat. § 803.09(1) or any former statute governing intervention as of right.

[84] *State v. City of Oak Creek*, 2000 WI 9, ¶ 23 n.14, 232 Wis. 2d 612, 605 N.W.2d 526 ("[O]nce legislation is enacted it becomes the affirmative duty of the Attorney General to defend its constitutionality.") (citation omitted). For a general discussion of the office of Wisconsin Attorney General, see Arlen C. Christenson, *The State Attorney General*, 1970 Wis. L. Rev. 298 (1970).

[85] *City of Oak Creek*, 232 Wis. 2d 612, ¶ 35 (citation omitted).

[86] *See* Wis. Stat. § 806.04(11) (providing that "[i]f a statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall . . . be served with a copy of the proceeding and be entitled to be heard").

*See Seitzinger v. Cmty. Health Network*, 2004 WI 28, ¶ 1 n.3, 270 Wis. 2d 1, 676 N.W.2d 426 (holding that the court had no jurisdiction to decide the constitutionality of a state statute when the attorney general had not been given notice as required by Wis. Stat. § 806.04(11)).

evant now that she has completed her term as attorney general. The Department of Justice is continuing the present action under the new attorney general on the course previously undertaken. The municipalities do not claim that the present attorney general is biased or is prevented in any manner from changing the trial strategy of the Department of Justice in the present case.[87]

¶ 98. For these reasons, the allegations relating to Attorney General Lautenschlager provide no support to the municipalities' argument.

¶ 99. The municipalities apparently intend their fourth allegation concerning DETF's motion for judgment on the pleadings as evidence that Attorney General Lautenschlager was reckless in handling the present case and in some sense betrayed her official responsibilities. This argument goes nowhere.

¶ 100. The municipalities accuse Lautenschlager of risking that the action will reach "this court for decision on the merits without an evidentiary record to support deferential review."[88]

¶ 101. The municipalities apparently are concerned that the present action will reach this court

---

[87] Whether the municipalities had a right of intervention at some point in the past is not determinative. Wisconsin Stat. § 803.06(1) provides that "[p]arties may be dropped or added by order of the court on motion of any party or on its own initiative at any stage of the action and on such terms as are just. . . ."

The municipalities suggest that Lautenschlager's conduct is still relevant to our Wis. Stat. § 803.09(1) inquiry given that the court of appeals did not address this question of relevance despite receiving notice that Lautenschlager was defeated in a primary election 10 days before the court of appeals released its opinion. This court determines a movant's right to intervention independently of the court of appeals.

[88] Petr.'s Br. 59.

"without an evidentiary record to sustain the legislature's" decision to grant state employee benefits to spouses but not to same-sex domestic partners.[89] To avoid this result, the municipalities want DETF to move to compel discovery at the circuit court. This position puts the municipalities squarely in agreement with, of all people, Helgeland. Helgeland moved the circuit court to compel discovery shortly after the municipalities moved to intervene.

¶ 102. The municipalities do not explain why they think that the circuit court will grant DETF's motion for judgment on the pleadings and why the circuit court will not grant Helgeland's motion for discovery.

¶ 103. Curiously, the municipalities do not object to DETF's motion for judgment on the pleadings on grounds that it is a weak motion destined to be denied. To the contrary, the municipalities explicitly acknowledge concerns that DETF's motion will be granted.[90] In their brief, the municipalities predict, without explanation, that the circuit court will grant DETF's motion and that the court of appeals will then affirm the circuit court's decision granting judgment to DETF.[91]

¶ 104. The municipalities' very unusual claim is thus that Lautenschlager somehow failed in her duties as attorney general by setting DETF on a course to defeat Helgeland before the circuit court and court of appeals.

¶ 105. The municipalities concede that should DETF prevail in the circuit court and court of appeals on its motion for judgment on the pleadings, this court nevertheless could remand for development of an evidentiary record if we determine, contrary to the circuit

---

[89] Petr.'s Br. 60.

[90] *Id.*

[91] *Id.*

court and court of appeals, that DETF's motion for judgment on the pleadings should not have been granted.[92] Yet the possibility of such a remand leaves the municipalities dissatisfied—not with the outcome, but rather, they claim, with the "extraordinary waste of time and resources" that would result if the action were to proceed to this court and then back to the circuit court whence it came.

¶ 106. The municipalities' criticism is baseless. The municipalities cannot persuasively argue that the Attorney General is abdicating her or his duty to defend the constitutionality of statutes by persuading two courts that a statute is constitutional. By moving for judgment on the pleadings, DETF has not waived its right to move for discovery in the event that its motion for judgment on the pleadings is ultimately denied.

¶ 107. We now move to the municipalities' argument that institutional elements prevent DETF from opposing Helgeland's action with sufficient vehemence. The municipalities argue that DETF merely administers the law that Helgeland challenges, while in contrast the municipalities establish and provide funding for their own employee benefit policies. The municipalities additionally allege that DETF is subject to the pressures of a "diverse" constituency, some portion of which may sympathize with Helgeland's position in the present action.[93]

¶ 108. These arguments founder on much the same ground as the municipalities' attack on Attorney

---

[92] *Id.* at 60–61.

[93] Is it not possible that the municipalities too may have diverse constituencies, some portion of which may sympathize with Helgeland's position in the present action?

General Lautenschlager. In a declaratory action to determine the constitutionality of a statute, it is the duty of the "public officers charged with the enforcement of the challenged statute or ordinance . . . [to] act in a representative capacity in behalf of all persons having an interest in upholding the validity of the statute or ordinance under attack."[94] Moreover, DETF's counsel, the Department of Justice, is charged by statute with the responsibility to "appear for the state and prosecute or defend all actions . . . in which the state is interested or a party . . . ."[95] The obligation of both the Department of Justice and public officers charged with the enforcement of state statutes is clear: they must defend the statute regardless of whether they have diverse constituencies with diverse views. DETF and the Department of Justice are composed of professionals, and absent some showing to the contrary, we presume that they will fulfill their duties under the law.[96]

¶ 109. The municipalities next argue that DETF cannot adequately represent the municipalities in any potential remedy phase of the action because DETF is incapable of advising the court on issues such as "collective bargaining agreements, duly adopted budgets, revenue limitations, [and] vested employee rights . . . ."[97] Even assuming that DETF is in fact incapable of grappling with issues such as these, this argument fails because the municipalities do not explain how information about these issues may assist in

---

[94] *White House Milk*, 275 Wis. at 249.

[95] Wis. Stat. § 165.25(1).

[96] *See White House Milk*, 275 Wis. at 249.

[97] Petr.'s Br. 57–58.

deciding the constitutional issue involved in the Helgeland action or in crafting any remedy to which Helgeland might be entitled.

¶ 110. The municipalities merely state in conclusory fashion that the issues in which the municipalities claim expertise are relevant to the state constitutional question presented, that is, whether the state constitution requires DETF to provide the same benefits to employees' same-sex domestic partners as provided to employees' spouses. The municipalities cannot call the adequacy of DETF's representation into question merely by vaguely positing that information they possess will somehow be useful to the court. Statutory revenue and levy limits imposed upon municipalities do not necessarily implicate a different evidentiary record for constitutional law purposes than the record that the state makes on the constitutional issue. The municipalities do not explain what this "different" evidentiary record might look like and why information the municipalities wish to present may be relevant to the question whether the state constitution requires DETF to provide the same benefits to state employees' same-sex domestic partners as those provided to employees' spouses.

¶ 111. We turn next to the municipalities' argument regarding DETF's failure to raise a long list of defenses favored by the municipalities. This assertion amounts to little more than a difference over trial strategy. We cannot declare as a matter of law that DETF's defense against Helgeland's action is inadequate simply because the municipalities disagree with DETF about which defenses should be presented before the circuit court. Reasonable lawyers and litigants often disagree about trial strategy.

¶ 112. We agree with the court of appeals that mere disagreements over trial strategy such as the one apparent here are not sufficient to demonstrate inadequacy of representation.[98] Moreover, the municipalities do not show any weakness in the legal position DETF has taken in the case. As we have already explained, the municipalities flatly predict that both the circuit court and the court of appeals will be persuaded by DETF's motion for judgment on the pleadings.

¶ 113. The municipalities may supplement DETF's defenses simply by accepting the circuit court's invitation to file an amicus curiae brief.

¶ 114. Finally, we reject the municipalities' argument that because DETF asserts that the municipalities' interests do not support intervention as of right, DETF's representation of the municipalities' interests is, as the municipalities' counsel put it at oral arguments, inadequate "per se." DETF's position that it adequately represents the municipalities' interests is wholly consistent with its additional position that the municipalities' interests do not satisfy the requirements

---

[98] *See* 7C Wright et al., *supra* note 22, § 1909, at 431–33 (a mere difference of opinion concerning litigation tactics or dislike of the representative party's lawyer does not constitute inadequate representation); *Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962), *quoted in Helgeland*, 296 Wis. 2d 880, ¶ 33 ("Mere difference of opinion among attorneys is not of itself inadequate representation within the meaning of [Rule 24 of the Federal Rules of Civil Procedure]. If it were, intervention of right would become almost automatic."); *Daggett*, 172 F.3d at 112 ("[T]he use of different arguments as a matter of litigation judgment is not inadequate representation per se," though "one can imagine cases where . . . a refusal to present obvious arguments could be so extreme as to justify a finding that representation by the existing party was inadequate.").

of Wis. Stat. § 803.09(1). DETF's construal of Wis. Stat. § 803.09(1) does not amount to a denial that the municipalities have no interests that DETF might represent.

E. Summary

¶ 115. For the reasons set forth, we conclude that the circuit court did not err in denying the municipalities' motion to intervene as a matter of right under Wis. Stat. § 803.09(1). Although it is arguable that the municipalities may claim a financial interest related to the DETF plans that are the subject of Helgeland's action and that disposition of the Helgeland action may, under the effect of stare decisis, as a practical matter impair or impede their ability to protect their stated interests, the municipalities make no showing that the financial interest is sufficient, direct, immediate, or special and that DETF inadequately represents their interests, much less a showing that could overcome the presumptions of adequacy applicable in this case.

¶ 116. The court weighs all the factors, including the nature of the municipalities' alleged interests, against the adequacy of representation by existing parties. Municipalities (or other entities or persons) will always have something at stake when the constitutionality of a statute affecting municipalities (or other entities or persons) is at issue, and there will always be potential movants that disagree at some level with decisions made by state agency defendants or their counsel. The municipalities have shown no special, personal, or unique interest in the present case. Were the municipalities granted a right to intervene upon such grounds, virtually any declaratory action for constitutional review of a statute would present a case in which at least some persons or entities may intervene as of right, as Justice Butler's concurrence demon-

strates. To construe Wis. Stat. § 803.09(1) and intervention as of right so broadly would unduly hamper the rights of parties to a declaratory action such as the present case to conduct and conclude their own lawsuit.[99]

¶ 117. The municipalities' generalized interest in the constitutionality of distinguishing between a spouse and a same-sex domestic partner requires a greater showing of inadequate representation by DETF. The municipalities do not demonstrate that their generalized interest is adverse to, or more powerful than, DETF's interest.[100] The municipalities further do not show that DETF has inadequately worked to realize the municipalities' and DETF's mutually-shared objective in the action, namely to defeat Helgeland's lawsuit. They do not allege collusion between the parties. They fail to demonstrate that DETF or its counsel has in any way failed in its duty to defend the action.

---

[99] *Cf. Town of Blooming Grove v. City of Madison*, 275 Wis. 328, 334, 81 N.W.2d 713 (1957) (citation omitted) (refusing to construe Wisconsin's Declaratory Judgment Act "as requiring that where a declaratory judgment as to the validity of a statute or ordinance is sought, every person whose interests are affected by the statute or ordinance must be made a party to the action. If it were so construed, the valuable remedy of declaratory judgment would be rendered impractical and indeed often worthless for determining the validity of legislative enactments, either state or local, since such enactments commonly affect the interests of large numbers of people.").

[100] *Cf. Armada Broad.*, 183 Wis. 2d at 476 (movant's "personal" interest in the particular document at issue in the action unshared by party defendant, which had only a general interest in maintaining the confidentiality of its personnel files); *Wolff*, 229 Wis. 2d at 746 (movant town "may have more at stake than" defendant county due to movant town's statutory duties not shared by defendant county).

¶ 118. For the reasons set forth, we conclude that the municipalities have no right of intervention under Wis. Stat. § 803.09(1).

### III. The Circuit Court Did Not Err in Denying Permissive Intervention

¶ 119. We turn now to the question whether the circuit court erred in denying the municipalities' motion for permissive intervention. Wisconsin Stat. § 803.09(2) provides in relevant part:

> Upon timely motion anyone may be permitted to intervene in an action when a movant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Wisconsin Stat. § 803.09(2) is based on Rule 24(b)(2) of the Federal Rules of Civil Procedure.[101]

¶ 120. As the text of Wis. Stat. § 803.09(2) itself makes clear, the circuit court has discretion to decide whether a movant may be permitted to intervene when the movant's claim or defense and the main action have a question of law or fact in common.[102] This court will not disturb a circuit court's discretionary decision so long as the record reflects "the circuit court's reasoned application of the appropriate legal standard to the relevant facts in the case."[103]

---

[101] *See Sewerage Comm'n of Milwaukee*, 104 Wis. 2d at 186.

[102] *See City of Madison*, 234 Wis. 2d 550, ¶ 11 n.11.

[103] *State v. Delgado*, 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

¶ 121. The municipalities assert that the circuit court erroneously exercised its discretion by denying the municipalities' motion for permissive intervention on the sole ground that the municipalities' suggestion that the action be converted into a class action indicated that the municipalities were likely to unduly delay adjudication of Helgeland's and DETF's rights.

¶ 122. The municipalities provide three arguments in support of their position that the circuit court erred in relying upon this single concern in denying the municipalities' motion: (1) The municipalities did not raise the issue of class certification in the context of their argument for permissive intervention under Wis. Stat. § 803.09(2) but instead suggested class certification as an alternative to joining all municipalities in the state under Wis. Stat. § 806.04(11); (2) The circuit court had power to prevent undue delay by denying any motion the municipalities would have brought for class certification; and (3) The municipalities are willing to withdraw their suggestion of class certification.

¶ 123. The municipalities' arguments are unpersuasive. The circuit court was free to consider the municipalities' suggestion of class certification regardless of whether the municipalities made this suggestion specifically in the context of discussing permissive intervention. The circuit court's concern about delay was also reasonable despite its authority to deny any motion for class certification. Indeed, consideration of a motion for class certification could itself substantially delay the action.

¶ 124. That the municipalities are now willing to withdraw their suggestion also has no bearing upon whether the circuit court erred in considering the suggestion before the municipalities made known their willingness to withdraw it.

59

¶ 125. Finally, though the circuit court addressed only the municipalities' suggestion of class certification, the municipalities' opposition to DETF's motion for judgment on the pleadings and their desire to introduce evidence supports the circuit court's conclusion that the municipalities' intervention would unduly delay adjudication of the parties' lawsuit.

¶ 126. The circuit court based its decision whether to grant permissive intervention on reasonable consideration of delay, a factor explicitly specified in Wis. Stat. § 803.09(2). Thus, no grounds exist on which to hold that the circuit court failed to apply the appropriate legal standard in a reasoned manner to the relevant facts of the case.

¶ 127. Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in denying the municipalities' motion for permissive intervention under Wis. Stat. § 803.09(2).

IV. Joinder Is Not Required

¶ 128. We turn lastly to the municipalities' argument that the circuit court erred in refusing to join the municipalities sua sponte under either Wis. Stat. § 803.03(1)(b)1. or Wis. Stat. § 806.04(11). This issue requires us to apply Wis. Stat. §§ 803.03(1)(b)1. and 806.04(11) to the undisputed facts of this case. As such, the issue presents a question of law that this court determines independently of the circuit court and court of appeals, benefiting from the analyses provided by these courts.[104]

---

[104] *Fire Ins. Exch. v. Basten*, 202 Wis. 2d 74, 81–82, 549 N.W.2d 690 (1996) (application of Wis. Stat. § 806.04(11) to a set

A. Wis. Stat. § 803.03(1)(b)1.

¶ 129. Wisconsin Stat. § 803.03(1) provides in full:

A person who is subject to service of process shall be joined as a party in the action if:

(a) In the person's absence complete relief cannot be accorded among those already parties; or

(b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:

1. As a practical matter impair or impede the person's ability to protect that interest; or

2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

This provision is based on Rule 19(a) of the Federal Rules of Civil Procedure.[105]

¶ 130. Wisconsin Stat. § 803.03(1)(b)1. contains language essentially identical to the second and third

---

of undisputed facts presents a question of law); *Glaeske v. Shaw*, 2003 WI App 71, ¶ 44, 261 Wis. 2d 549, 661 N.W.2d 420 ("Whether a party is a necessary party [under Wis. Stat. § 803.03(1)] is a question of law" the court of appeals decides de novo) (citing *Dairyland Greyhound Park, Inc. v. McCallum*, 2002 WI App 259, ¶ 10, 258 Wis. 2d 210, 655 N.W.2d 474).

[105] In its current form, Rule 19(a) provides in relevant part as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

requirements of intervention as of right under Wis. Stat. § 803.09(1), namely the requirements that the movant claim an interest sufficiently related to the subject of the action and that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest. Wisconsin Stat. § 803.03(1)(b)1. does not list the first and fourth requirements of intervention as of right under Wis. Stat. § 803.09(1), namely timeliness of the motion and inadequacy of representation by the existing parties.

¶ 131. Nevertheless, the court of appeals declared in the present case that

> [t]he inquiry of whether a movant is a necessary party under § 803.03(1)(b)1. is in all significant respects the same inquiry under Wis. Stat. § 803.09(1) as to whether a movant is entitled to intervene in an action as a matter of right, including the factor of whether the interest of a movant is adequately represented by existing parties.[106]

In so holding, the court of appeals relied on its own precedent interpreting *City of Madison v. Wisconsin Employment Relations Commission*, 2000 WI 39, ¶ 11

---

(A) in that person's absence, the court cannot accord complete relief among existing parties, or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

[106] *Helgeland*, 296 Wis. 2d 880, ¶ 46 (citing *Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶ 10).

n.8, 234 Wis. 2d 550, 610 N.W.2d 94.[107] In *City of Madison* the court declared that "[i]ntervention as a matter of right may . . . be compared to 'joinder of persons needed for just and complete adjudication' under Wis. Stat. § 803.03(1)(b)1."[108]

¶ 132. The municipalities object to the court of appeals' interpretation on grounds that it ignores the textual difference between the two provisions. They argue that we should interpret Wis. Stat. § 803.03(1)(b)1. to impose only the second and third requirements of Wis. Stat. § 803.09(1) and not the requirement of inadequate representation.

¶ 133. We agree with the court of appeals. The court of appeals advanced an interpretation of Wis. Stat. § 803.03(1)(b)1. that is substantially supported by federal court decisions construing Fed. R. Civ. P. 19(a), the federal analogue to Wis. Stat. § 803.03(1)(b)1. Furthermore, by applying our ordinary principles of statutory construction, we independently determine that the court of appeals' interpretation of Wis. Stat. § 803.03(1)(b)1. is correct.

¶ 134. "Despite the distinction in the language" of Rules 19(a) and 24(a) of the Federal Rules of Civil Procedure, "some courts have held that joinder will not be compelled under the 'impair or impede' provision of Rule 19(a) if the absentee's interest is adequately represented by an existing party."[109] The reasoning behind

---

[107] *See Dairyland Greyhound Park*, 258 Wis. 2d 210, ¶ 10 (citing *City of Madison*, 234 Wis. 2d 550, ¶ 11 n.6).

[108] *City of Madison*, 234 Wis. 2d 550, ¶ 11 n.8.

[109] 4 Moore, *supra* note 24, § 19.03[3][f][ii], at 19–56. *See also, e.g., Ohio Valley Envt'l Coalition v. Bulen*, 429 F.3d 493, 504–05 (4th Cir. 2005) (affirming district court's holding "that joinder was not required because the parties are capable of

this interpretation appears to be that "[a]s a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit."[110] The court of appeals' interpretation of Wis. Stat. § 803.03(1)(b)1. is in line with this view of Federal Rule 19(a).

■

¶ 135. More importantly, this interpretation is also dictated by recognized principles of statutory interpretation. In construing any provision we begin with its text and give appropriate consideration to related provisions. We give effect to every word so as to not render any part of the statute superfluous.

¶ 136. The municipalities' interpretation of Wis. Stat. § 803.03(1)(b)1. cannot be correct because it would render Wis. Stat. § 803.09(1)(b)1. superfluous. Under the municipalities' interpretation of Wis. Stat. § 803.03(1)(b)1., a movant who fails to meet the fourth requirement of intervention as of right under Wis. Stat. § 803.09(1) may simply turn around and force its way into the action by arguing that the court must join the movant, sua sponte, as a necessary party under Wis. Stat. § 803.03(1)(b)1. The municipalities would thus have this court read Wis. Stat. § 803.03(1)(b)1. in a

representing the interests of" absent parties); *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1429 (8th Cir. 1994) (disposition of action "will not as a practical matter impair or impede [absentee's] ability to protect its interest because [one party to the action] has the same interest establishing the facts that [absentee] does").

[110] *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) (holding that absentee tribes were not necessary parties to an action challenging fishing regulations because the United States adequately represented their interests).

manner rendering the fourth requirement of Wis. Stat. § 803.09(1) entirely optional. This interpretation undermines both § 803.09(1) and § 803.03(1)(b)1.

¶ 137. Accordingly, we conclude that the circuit court did not err as a matter of law in refusing to join the municipalities as necessary parties under Wis. Stat. § 803.03(1)(b)1. If a person has no right of intervention under Wis. Stat. § 803.09(1), the courts have no duty to join that person sua sponte as a necessary party under Wis. Stat. § 803.03(1)(b)1.

B. Wis. Stat. § 806.04(11)

¶ 138. The relevant portion of Wis. Stat. § 806.04(11), a subsection of the Uniform Declaratory Judgment Act, states that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding. . . . "

¶ 139. The municipalities assert that they qualify for joinder under Wis. Stat. § 806.04(11) because the same "substantial legal, contractual, economic and policy interests"[111] that the municipalities propose as interests warranting a right of intervention will be affected by judgment in Helgeland's declaratory action. We disagree with the municipalities.

¶ 140. This court has determined that the Declaratory Judgment Act does not require "the joinder as parties, in a declaratory action to determine the validity of a statute or ordinance, of any persons other than the

___

[111] Petr.'s Br. 70.

public officers charged with the enforcement of the challenged statute or ordinance."[112] We have not construed Wis. Stat. § 806.04(11) to require "that where a declaratory judgment as to the validity of a statute or ordinance is sought, every person whose interests are affected by the statute or ordinance must be made a party to the action."[113] If the statute "were so construed, the valuable remedy of declaratory judgment would be rendered impractical and indeed often worthless for determining the validity of legislative enactments, either state or local, since such enactments commonly affect the interests of large numbers of people."[114]

¶ 141. Applying this court's established interpretation of Wis. Stat. § 806.04(11) to the instant case,[115] we

[112] *White House Milk*, 275 Wis. at 249. *See also North Side Bank v. Gentile*, 129 Wis. 2d 208, 215, 385 N.W.2d 133 (1986) (citation omitted) (Declaratory Judgment Act "should not be construed to require that all interested parties must be joined in a declaratory judgment action seeking to adjudge the validity of a statute."); *Bence v. Milwaukee*, 84 Wis. 2d 224, 234–35, 267 N.W.2d 25 (1978) (citing this court's assertion in *White House Milk* that it "was sufficient where a public law was involved to have the interest of other parties represented by the public officer who has the duty of upholding the constitutionality of the statute.").

[113] *Blooming Grove*, 275 Wis. at 334.

[114] *Id.* (citation omitted). *See also North Side Bank*, 129 Wis. 2d at 215 ("Strict application of [Wis. Stat. § 806.04(11) to require that all interested parties must be joined in a declaratory judgment action] would make the statute unworkable with respect to determining the validity of a statute or ordinance.") (citation omitted).

[115] Besides citing a single foreign state opinion holding that a declaratory action to review the constitutionality of a statute could not proceed without joinder of 16 highway construction firms whose contracts with the state depended for their validity upon the challenged statute, *Haynes v. Anderson*, 77 N.W.2d 674

determine that this subsection does not require joinder of the municipalities. The municipalities are not "public officers charged with the enforcement of" Wis. Stat. § 40.02(20), the statute that Helgeland challenges.[116]

¶ 142. The municipalities mistakenly adduce cases in support of the position that in a declaratory action to determine rights under an agreement, Wis. Stat. § 806.04(11) requires joinder of all parties to the agreement.[117] These cases are inapposite because Helgeland has not brought an action to declare her rights under any agreement, much less an agreement to which the municipalities are party. Helgeland seeks a declaration of her rights under state statutes and the state constitution, not rights under the interpretation of a contract. Helgeland is not a party to any contract asserted by the municipalities.

¶ 143. For the reasons set forth, we determine that the circuit court did not err in refusing to join the municipalities under Wis. Stat. § 806.04(11).

\* \* \* \*

¶ 144. We conclude (1) that the municipalities have no right of intervention under Wis. Stat.

---

(Neb. 1956), the municipalities offer no reason that we should not interpret Wis. Stat. § 806.04(11) as we have in our prior cases.

[116] *See White House Milk*, 275 Wis. at 249.

[117] In their brief, the municipalities rely on *Lozoff v. Kaishershot*, 11 Wis. 2d 485, 105 N.W.2d 783 (1960) (considering an action for declaration of rights under deed restrictions); *Rudolph v. Indian Hills Estates, Inc.*, 68 Wis. 2d 768, 229 N.W.2d 671 (1975) (considering an action in which individual members of a corporation sought to dissolve the corporation by declaratory relief); and *Ambassador Oil Corp. v. Robertson*, 384 S.W.2d 752 (Tex. Ct. Civ. App. 1964) (considering an action to declare rights under various contracts).

67

§ 803.09(1); (2) that the circuit court properly exercised its discretion in denying the municipalities permissive intervention under Wis. Stat. § 803.09(2); and (3) that the circuit court did not err in refusing to join the municipalities under either Wis. Stat. § 803.03(1)(b)1. or § 806.04(11). Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order denying intervention or joinder.

¶ 145. *By the Court.*—The decision of the court of appeals is affirmed.

¶ 146. LOUIS B. BUTLER, JR., J. *(concurring).* Twelve individuals (including six current or former state employees) bring a legal action against the Wisconsin Department of Employee Trust Funds (DETF), DETF Secretary Eric Stanchfield, the Employee Trust Funds Board, and the Group Insurance Board (collectively "DETF"). DETF is ably represented by the Wisconsin Attorney General. Yet simply because other entities who are not at all involved in this action are concerned that any decision rendered by a court of law might become binding precedent in some future legal action against them, the dissent asserts that as a matter of right, these uninvolved entities can essentially highjack this lawsuit from the parties and turn it into a political referendum unrelated to the action filed. Give me a break.

¶ 147. For purposes of this concurrence, the nature of the lawsuit and the issues presented are, for me, irrelevant. What is relevant is the impact of what the dissent suggests should happen here. Every published opinion of the Wisconsin Court of Appeals or of this court is binding precedent on all future litigants as to the issues presented. Thus, does every criminal defendant facing sentencing have a right to intervene in every

appellate case involving sentencing? They will be bound by the result. What about parties to a contract? Can they intervene in any appellate case involving contract law and/or the economic loss doctrine? They certainly have an interest in the outcome. What about tort reform? Can Civil Trial Counsel of Wisconsin (CTCW) and the Wisconsin Academy of Trial Lawyers (WATL)[1] intervene in every tort action brought on appeal? The precedent the court will decide as to tort law will most certainly bind them. And therein lies the absurdity of the dissent.

¶ 148. Under the facts of this case, the Wisconsin municipalities who have sought to intervene are definitely not the only outside entities that have an interest in the outcome of this case. Are we prepared to allow every pro- and anti-gay rights group, nationally and within Wisconsin, intervention as a matter of right in this case? What about every labor union that has members that might be affected by the outcome? Political leaders, church groups, social activists, and others will be bound by any published decision an appellate court will make. Are we prepared to let them all in, effectively taking over the litigation and running up costs, or do we hear from the parties who brought the action in the first place?

¶ 149. Let us keep in mind that the municipalities, and any other interested party, for that matter, can seek permission to file an amicus brief, putting forth their position. Such requests are routinely granted. Thus, I suspect, the municipalities will not be precluded from being heard in this matter. What the dissent suggests, however, will ultimately reduce the average citizen's access to the courts, in that large organizations

---

[1] Now known as the Wisconsin Association for Justice (WAJ), as of January 14, 2008.

with deep pockets will be allowed to intervene in any case in which they express an interest, driving up the costs to the point that the average Joe can no longer afford to be heard. This is unacceptable.

¶ 150. For the foregoing reasons, I join the majority opinion, and respectfully concur.

¶ 151. DAVID T. PROSSER, J. (*dissenting*). This is an action challenging the constitutionality of Wis. Stat. § 40.02(20), which defines the term "dependent" in Chapter 40 of the Wisconsin Statutes relating to the Public Employee Trust Fund. It also challenges the constitutionality of Wis. Stat. § 103.10(3)(b)3., which defines the persons with a serious health condition for whom an employee may take family leave under Wis. Stat. § 103.10, Wisconsin's Family and Medical Leave Act.

¶ 152. In their complaint, the plaintiffs describe themselves as six "lesbian couples in committed, intimate relationships." They set out a series of health-related hardships that they believe would be alleviated if they were able to obtain certain health care benefits from the state. Although each couple includes a current or former state employee, none of these employees is eligible to obtain for her domestic partner family health benefits that are available to state employees who are married to an opposite-sex spouse. In sum, the plaintiffs seek access to the same health insurance and family leave options that the state offers to employees in a traditional marriage.

¶ 153. The plaintiffs' action is sweeping and significant. It is part of the American Civil Liberties Union's (ACLU) National Lesbian and Gay Rights Project. It presents a major civil rights issue that could affect every public employer that operates under the Public Em-

ployee Trust Fund and, potentially, every employer governed by Wisconsin's Family and Medical Leave Act.

¶ 154. This phase of the action does not address the merits of the suit. It is confined to the procedural question whether eight "municipalities"—two cities, two villages, two towns, and two school districts—may intervene in the suit as parties. The majority denies the municipalities the right to intervene. Its crimped legal analysis treats the municipalities' request as though the case involved nothing more than a routine zoning variance instead of one of the great social and political controversies of our time.

¶ 155. The majority opinion brings to mind the lament of former United States Congressman and United States Court of Appeals Judge Abner Mikva about the United States Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973). In 1999 Judge Mikva told an interviewer that he supported the result in *Roe v. Wade* but regretted that the Supreme Court had "preempted the whole political process," which he believed was moving legislatively toward greater abortion rights. The Court's decision "pleased a lot of us," Mikva said, "[b]ut it angered [the] minority with a passion, because they had just been short-circuited in their efforts to fight it out in the political arena." Mikva continued:

> You can't write a justice of the Supreme Court and say "Vote No." You can't even picket at the Supreme Court, though they tried to. There is a frustration that these five or six people, unelected, had made this basic decision which had been the subject of political process for so many years before. The justices were surprised. The late justice Blackm[u]n expressed his shock at how angry the minority was with the decision. I could have told him that was going to happen. And in retrospect, I wish the [C]ourt had stayed its hand and allowed the

71

political process to continue, because we would have legislated the effect of *Roe v. Wade* in most states—not all of them, but in most states—and we wouldn't have had to pay the political price we've had to pay for it being a court decision. *The people who are angry at that court are angry beyond measure. As far as they are concerned, the whole system is rotten because they've lost their opportunity to slug it out.*[1]

¶ 156. Once again, this phase of the action does not address the merits of the suit. However, the effect of the majority decision is to deprive eight representative municipalities of the opportunity to slug it out in the process leading to an ultimate decision. As a result, they will have no real say about their future ability to determine whether to extend dependent health care benefits to same-sex couples, as some municipalities voluntarily have. The decision to exclude the municipalities is not good for the Wisconsin judiciary, and it is not good law. As a result, I must respectfully dissent.

I

¶ 157. The principal legal issue before the court is whether the municipalities satisfy the requirements of Wis. Stat. § 803.09(1) to intervene in this suit as a matter of right. Wisconsin Stat. § 803.09(1) reads as follows:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is

---

[1] Interview by Harry Kreisler with Abner Jay Mikva, former United States Congressman, former United States Court of Appeals Judge for the D.C. Circuit, and former White House Counsel, in Berkeley, California (April 12, 1999) *available at* http://globetrotter.berkeley.edu/people/Mikva/mikva-con4.html (last visited Jan. 24, 2008) (emphasis added).

the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

¶ 158. With the exception of one word, the quoted language is identical to the rule adopted by this court in 1975 as part of the new Wisconsin Rules of Civil Procedure.[2] *See* 67 Wis. 2d 585, 650–51 (1975).

¶ 159. Subsection (1) is based on Rule 24(a) of the Federal Rules of Civil Procedure. Charles D. Clausen and David P. Lowe, *The New Wisconsin Rules of Civil Procedure Chapters 801–803*, 59 Marq. L. Rev. 1, 108 (1976) (hereinafter *Clausen*). Accordingly, "we look to cases and commentary relating to Rule 24(a)(2) for guidance in interpreting sec. 803.09(1)." *State ex rel. Bilder v. Twp. of Delavan*, 112 Wis. 2d 539, 547, 334 N.W.2d 252 (1983).

¶ 160. Federal Rule 24 evolved significantly from its inception in 1937. A 1946 amendment provided that upon timely application anyone *shall* be permitted to intervene "(3) when the applicant is so situated as to be adversely affected by . . . disposition of property which is in the custody or subject to the control or disposition of the court or officer thereof." Federal Rule of Civil Procedure 24(a)(3) (1946). This language amplified and restated federal practice. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 134 (1967). However, the rule was altered in 1966 to facilitate substantially expanded intervention *as of right*. This revised rule, which drew upon federal civil rules related to joinder of persons needed for just adjudication (Rule 19) and class actions (Rule 23), provides that an appli-

---

[2] In the original rule, the word "he" was used in place of the word "movant" in the current phrase "the movant is so situated."

cant is entitled to intervene in an action when the applicant's position is comparable to that of a person under Rule 19(a)(2)(i), unless the movant's interest is already adequately represented in the action.[3] *See* Advisory Committee Notes, 1966 Amendment, 28 U.S.C.A., Rule 24 at 755–57.

¶ 161. Intervention, as a procedural mechanism under Rule 24, is to be construed liberally, and doubts resolved in favor of the proposed intervenor. *See* 6 James William Moore, et al., *Moore's Federal Practice* § 24.03[1][a], at 24–24, 24–25 (3d ed. 2002)(hereinafter *Moore*); *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001); *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991); *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986). Some federal courts have stated that the requirements for intervention are to be construed in favor of intervention. *Am. Maritime Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) ("the requirements for intervention are to be construed in favor of intervention"); *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983) ("we recognize that the requirements of Rule 24(a) are to be construed in favor of the applicant for intervention") (citation omitted).

---

[3] Federal Rule of Civil Procedure 24(a) currently reads:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

¶ 162. Under Federal Rule 24, the intervention inquiry must be flexible, involving a balancing and blending of requirements, often applying them as a group. *Moore, supra*, § 24.03[1][a], at 24–25. Intervention as of right may be granted if the applicant's claimed interest may be significantly impaired by the action, even if some uncertainty exists regarding that interest. *Id.*

## II

¶ 163. Wisconsin's adoption of Federal Rule 24(a)(2) in Wis. Stat. § 803.09(1) was a departure from our prior law—namely, Wis. Stat. § 260.205 (1973)— because intervention under the prior statute "was only permissive, i.e., permitted in the court's discretion." *Clausen, supra*, at 108. Professor Clausen observed:

> While the intervention under subsection (1) is of right ("shall be permitted"), the rule is still discretionary insofar as the court must make a determination as to [1] whether or not the motion is timely, [2] whether the absent party's ability to protect his interest may as a practical matter be impaired, and [3] whether the absent party's interest is adequately represented by existing parties.

*Id.*

¶ 164. Clausen's discussion of circuit court "discretion" in making certain determinations under our rule is somewhat at odds with recent pronouncements in federal cases. For instance, in the *Southwest Center* case, the court said: "Rule 24 provides for intervention as of right and permissive intervention.... *We review de novo a district court's denial of a motion to intervene as of right, with the exception of timeliness, which we*

75

review for abuse of discretion." *Southwest Center*, 268 F.3d at 817 (emphasis added). *See also United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003) ("This court reviews the [intervention] factors de novo, with the exception of the first factor—the timeliness of the intervention—which this court reviews for an abuse of discretion."); *Stupak-Thrall*, 226 F.3d at 471 ("We review a district court's decision regarding timeliness (the first element) for abuse of discretion; the remaining three elements are reviewed de novo."). What these courts are saying is that three of the four factors are deemed questions of law.

¶ 165. Analytically, the more discretion this court gives to our circuit courts to deny motions for intervention as of right, the more we revert to our prior law in which there was no intervention "as of right."

¶ 166. Immediately after the Clausen discussion quoted in ¶ 163, herein, Professor Clausen added: "Nevertheless, the new rule is founded upon the same considerations underlying section 803.03 which define those parties who must be joined in an action if feasible." *Clausen, supra,* at 108; *see also City of Madison v. WERC*, 2000 WI 39, ¶ 11 n.8, 234 Wis. 2d 550, 610 N.W.2d 94. Thus, Wis. Stat. § 803.03 is pertinent to our review. It reads in part:

> *Joinder of persons needed for just and complete adjudication.*
>
> *(1) Persons to be joined if feasible.* A person who is subject to service of process shall be joined as a party in the action if:
>
> (a) In the person's absence complete relief cannot be accorded among those already parties; or
>
> (b) The person claims an interest relating to the

76

subject of the action and is so situated that the disposition of the action in the person's absence may:

> 1. As a practical matter impair or impede the person's ability to protect that interest. (Emphasis added.)

In my view, the words in the title of § 803.03—"just and complete adjudication"—suggest the spirit in which the section ought to be interpreted. *See, e.g., Zabel v. Zabel*, 210 Wis. 2d 336, 343, 565 N.W.2d 240 (Ct. App. 1997) (concluding that the joinder of a husband's mother as a third-party defendant in a divorce action was necessary for a just and complete adjudication of the parties' martial property rights).

¶ 167. The present case, of course, is a civil rights action. Plaintiffs candidly acknowledge that their suit is intended to have wide impact. Although the named plaintiffs include only six same-sex couples, their suit is intended to affect all same-sex couples in state service. It is reasonable to suppose that they also intend a favorable decision to affect same-sex couples who work for Wisconsin counties, cities, villages, towns, and school districts . . . and thus, by necessity, their employers. The fact that the plaintiffs have chosen strategically not to include in this suit any same-sex couples from Wisconsin local governments[4] should not preclude representative municipalities from weighing in for a

---

[4] This suit is nearly identical to *Alaska Civil Liberties Union v. State of Alaska & Municipality of Anchorage*, 122 P.3d 781 (Alaska 2005), except that the Alaskan plaintiffs named the "Municipality of Anchorage" as a defendant, and Anchorage had its own representation in the case throughout. *See also Baker v. State*, 744 A.2d 864 (Vt. 1999) (action brought against state, city, town).

"just and complete adjudication" of the controversy because, as "a practical matter," a decision for the plaintiffs will "impair or impede" the municipalities' ability to protect their interests. As "a practical matter," this suit is equivalent to a class action.

## III

¶ 168. As noted above, Wis. Stat. § 803.09(1) has multiple elements and requires interpretation. The first major case interpreting the rule was *Bilder* in 1983. The court declared that the Wisconsin intervention rule establishes a four-part test that the proposed intervenor must meet:

> (1) timely application for intervention;

> (2) an interest relating to the property or transaction which is the subject of the action;

> (3) that the disposition of the action may as a practical matter impair or impede the proposed intervenor's ability to protect that interest; and

> (4) that the proposed intervenor's interest is not adequately represented by existing parties.

*Bilder*, 112 Wis. 2d at 545.

¶ 169. In a second major case involving intervention, this court summarized the four-part test as follows:

> (1) that the motion to intervene be made in a timely fashion;

> (2) that the movant claims an interest relating to the property or transaction which is the subject of the action;

78

(3) that the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest; and

(4) that the movant's interest is not adequately represented by existing parties.

*Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 471, 516 N.W.2d 357 (1994).

¶ 170. These two decisions either paraphrase or repeat the exact language of the rule. The same may be said of *City of Madison v. WERC*, 234 Wis. 2d 550, ¶ 11, and *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 740–41, 601 N.W.2d 301 (Ct. App. 1999). However, the majority opinion supplements the language of our rule and the formulations in previous opinions by adding a new word to the element relating to the intervenor's claimed interest. The majority rephrases the "interest" test to read: "that the movant claims an interest *sufficiently* related to the subject of the action[.]" Majority op., ¶ 38 (emphasis added).

¶ 171. This subtle change is not insignificant. Its effect is to vest courts with discretion to determine whether a potential intervenor's "interest" is "sufficient" to satisfy the second prong of the rule. The "interest" element or test of the rule happens to be the only element that Professor Clausen did not mention as involving some judicial discretion. *See* ¶ 163, herein.

¶ 172. Although the majority opinion ultimately concedes that the municipalities satisfy the "interest" element, it uses its new formulation of the test to attack the interest claimed, so that it can conclude: "The municipalities' generalized interest in the subject of the instant action, namely, the constitutionality of a statute

applicable to a plan for state employees, is at *the far edge* of what may constitute a *sufficiently related interest* for purposes of the right to intervene statute." Majority op., ¶ 74 (emphasis added). The majority opinion then applies the coup de grâce: "The *weakness of the municipalities' showing* with respect to the interest requirement *means* that to demonstrate a right of intervention the municipalities should make *a strong showing* in the other requirements to intervene as of right." *Id.* In other words, it is not enough for a potential intervenor to satisfy all four elements or tests for intervention as of right; now, a potential intervenor must "strongly" satisfy these elements, or it may not be permitted to intervene as of right.

## IV

¶ 173. The first element of the rule is timely application for intervention. There is no dispute that the municipalities' motion for intervention was timely. Consequently, the first element of the rule is satisfied.

## V

¶ 174. The second element of the rule is interest, namely, whether the municipalities' claim an interest relating to the property or transaction which is the subject of the action.

¶ 175. In *Bilder*, like *Armada, City of Madison*, and *Wolff*, the court approved intervention. The decision in *Bilder* turned on the intervenor's "interest." *See Bilder*, 112 Wis. 2d at 549–50. The court's discussion admittedly uses the word "sufficient" in several places, but the spirit of the discussion is quite different from what we see in the majority opinion. The *Bilder* court said:

80

The federal courts and commentators have not been able to derive a precise test for determining which type of interest is sufficient to allow a party to intervene as a matter of right.

. . . .

The various federal courts have differed in their approaches. Some appear to verbalize the sufficiency of interest factor as in part a question of standing or as requiring a "direct, substantial, legally protectable interest in the proceedings."

Other courts have viewed the interest test for intervention more broadly.

. . . .

*We agree with the broader, pragmatic approach to intervention as of right. In deciding whether to allow a party to intervene as a matter of right, the court should view the interest sufficient to allow the intervention practically rather than technically.*

. . . .

Courts using the pragmatic, policy-based approach [ ] view the interest test as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

*Bilder*, 112 Wis. 2d at 547–49 (internal citations omitted) (emphasis added).

¶ 176. The *Bilder* court then quoted with approval a passage from *Smuck v. Hobson*, 408 F.2d 175, 179–80 (D.C. Cir. 1969):

The decision whether intervention of right is warranted thus involves an accommodation between two

potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending. Since this task will depend upon the contours of the particular controversy, general rules and past decisions cannot provide uniformly dependable guides. . . . *[T]he [interest] requirement should be viewed as a prerequisite rather than relied upon as a determinative criterion for intervention. If barriers are needed to limit extension of the right to intervene, the criteria of practical harm to the applicant and the adequacy of representation by others are better suited to the task.* If those requirements are met, the nature of his "interest" may play a role in determining the sort of intervention which should be allowed—whether, for example, he should be permitted to contest all issues, and whether he should enjoy all the prerogatives of a party litigant.

*Bilder*, 112 Wis. 2d at 549 (emphasis added).

¶ 177. In Chief Judge David Bazelon's view, the interest requirement should not be used as the determinative criterion for intervention as of right. "It would be unfortunate," he said, "to allow inquiry to be led once again astray by a myopic fixation upon 'interest.' " *Smuck*, 408 F.2d at 179.

¶ 178. Here, the majority opinion devotes 28 paragraphs to discrediting the municipalities' interest. The reason for this laborious effort is revealed in ¶ 39 of the opinion, where the majority admits that "a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet other requirements as well." Majority op., ¶ 39 (citing *Moore, supra,* § 24.03[1][b], at 24–25 ("[A] lesser showing of impairment may be required by the court if the applicant's interest is very strong. . . .")). The majority

portrays the municipalities' interest as "weak" so that it can characterize the "interest" element as dragging down the municipalities' position on the other three elements. *See* majority op., ¶ 74.

¶ 179. What is the municipalities' interest?

¶ 180. According to Wis. Stat. § 40.01(a), the Public Employee Trust Fund was created to aid public employees in protecting themselves and their beneficiaries against the financial hardships of old age, disability, death, illness, and accident. The trust fund includes multiple programs, such as the retirement system and health care coverage, that make provision for these concerns.

¶ 181. The Wisconsin Retirement System (WRS) is one of the largest in the United States. Any public employer in Wisconsin may elect to participate in the WRS, Wis. Stat. § 40.21, but for some employers—such as the state and all counties except Milwaukee County —participation is mandatory. Art Zimmerman, *Wisconsin Retirement System Informational Paper 78*, Wisconsin Legislative Fiscal Bureau 8 (January 2007). The Fiscal Bureau reports that a total of 1,412 public employers, including 58 state agencies, participate in the WRS. Other participants in the WRS include 71 counties, 186 cities, 218 towns, 236 villages, and 426 school districts. *Zimmerman, supra*, at 9. This listing includes the eight municipalities seeking to intervene in this case.

¶ 182. For purposes of this suit, it is clear that not nearly as many local public employers participate in the Department of Employee Trust Funds (DETF) health insurance programs as in the WRS. The exact number of local employers who participate is not known to the writer. Nonetheless, according to the DETF's Comprehensive Annual Financial Report for 2004, 11,669 "ac-

tive" local employees and 1,787 retired local employees participated in a health insurance program through the fund in 2004. This figure includes employees from the city of Watertown, village of Oostburg, and town of Cottage Grove whose employers seek to intervene in this suit.

¶ 183. Wisconsin Stat. § 40.02(20) defines the word "dependent" for use throughout Chapter 40, except for Wis. Stat. § 40.98. Subsection (20) reads:

> (20) "Dependent" means the spouse, minor child, including stepchildren of the current marriage dependent on the employee for support and maintenance, or child of any age, including stepchildren of the current marriage, if handicapped to an extent requiring continued dependence. For group insurance purposes only, the department may promulgate rules with a different definition of "dependent" than the one otherwise provided in this subsection for each group insurance plan.

¶ 184. The word "dependent," as defined in Wis. Stat. § 40.02(20), appears in Wis. Stat. § 40.03(6)(b) (granting the Group Insurance Board the power to provide employees and their dependents with group insurance plans), § 40.04(10) (providing for an accumulated sick leave conversion account for retired employees and their surviving dependents), § 40.04(11) (providing for a health insurance premium credit account for retired employees and their surviving dependents), §§ 40.05(b), (bc), and (be), (providing for unused sick leave to be credited to payment of health insurance premiums for employees and their surviving insured dependents), § 40.51(3) (providing that health insurance contracts shall establish provisions for employees and dependents to continue group coverage), § 40.52(1)(a) (providing for a "family coverage option" to allow coverage for all eligible dependents), § 40.52(2)

(allowing for special insurance plan provisions when one spouse or other dependent is eligible for federal health and hospital care for the aged), § 40.80(2r)(a)2. (defining "domestic relations order," taking into consideration a court's decision to assign deferred compensation assets to "a spouse, former spouse, child, or other dependent"), and §§ 40.95(1)(a) and (2) (providing that the DETF administer a program to provide credits for the purchase of health insurance for retired employees and their surviving insured dependents).

¶ 185. Thus, a court decision altering the interpretation of the word "dependent" is likely to have wide effect on local participants in a number of programs in Chapter 40. Some of these effects will be clear and direct; others will be unclear and indirect. If there were an evidentiary record in this suit, the uncertainty about the effects of a decision favoring the plaintiffs would be reduced.

¶ 186. Watertown, Oostburg, and Cottage Grove are enrolled in the specific DETF plans that the plaintiffs seek to modify. Thus, these three municipalities—and all other municipalities similarly situated—will experience the direct costs of any court decision mandating that DETF plans cover a same-sex domestic partner and the children of a same-sex domestic partner when those children are dependent upon the employee-partner for support and maintenance. The remaining five municipalities—Caledonia, Green Bay, Hobart, the School Board of New Berlin, and Raymond School District #14, and all municipalities similarly situated— would likely confront more expensive health care coverage if they wanted to join a DETF health care plan, or if they were required to join a DETF health care plan.

¶ 187. Watertown, Oostburg, and Cottage Grove have collective bargaining agreements. Court-ordered

coverage of same-sex domestic partners would rewrite these collective bargaining agreements by mandating benefits that were not negotiated at the bargaining table. These new benefits would be provided in addition to, not in lieu of, previously negotiated benefits, adding to the cost of fringe benefits. The spillover of a decision favoring the plaintiffs to the collective bargaining agreements of other municipalities—through arbitration or legal action, as well as negotiation—would be certain if not direct.

¶ 188. The eight municipalities here claim that *every* municipality that is part of any DETF program employing the term "dependent," as defined in Wis. Stat. § 40.02(20), will be directly affected by any change in the interpretation of this definition.[5] This includes all programs and subjects enumerated in ¶¶ 181–82 above, including deferred compensation programs and qualified domestic relations orders (QDRO). They contend persuasively that "[t]he Wisconsin [C]onstitution is not so facile that it requires redefining 'spouse' in one DETF program, but completely disregards the very same effect in another [program]."

¶ 189. The municipalities posit additional interests that are less tangible than increased costs and modification of existing contracts. They contend that a

[5] The plaintiffs' complaint seeks to change every DETF benefits plan. Under the heading "Relief Sought," the plaintiffs' first amended complaint asks the circuit court to:

C. Enter an order enjoining the defendants from excluding lesbian and gay male employees and their same-sex domestic partners from the same employment benefits provided to similarly-situated employees and their spouses, including by classifying same-sex domestic partners of state employees as dependents *for purposes of participation in all employment benefit contracts and plans*[.] (Emphasis added.)

judicial decision favoring the plaintiffs would constitute an incursion into their core powers to govern their own affairs. In our system of government, municipalities have the power to hire employees and negotiate individual contracts or collective bargaining agreements with these employees.[6] These negotiations involve tradeoffs. Because their revenues are limited, local governments are seldom in a position to afford all the compensation and benefits that local employees would like. Thus, the granting of one benefit often comes at the expense of another and may affect overall compensation. When a new benefit is imposed upon local governments from the outside, it strips these governments of their authority to negotiate or perhaps even plan for the new benefit.

¶ 190. Of course, the legislature may impose controversial or unwanted benefit obligations upon local governments and thereby affect their costs and existing contracts. However, legislatively created benefits represent the fruit of a political process in which local governments freely and actively participate. Legislatively imposed benefit obligations can be given a delayed effective date or be softened by increased state aid, as political accommodations. Legislatively imposed benefits can also be repealed at a later date. By contrast, benefits ordered by a court interpreting the

---

[6] The legislature has delegated general power to municipalities to hire personnel and negotiate employment contracts via Wis. Stat. § 111.70. *See Glendale Prof'l Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 108, 264 N.W.2d 594 (1978) ("Sec. 111.70, Stats., is legislation that specifically authorizes local action, i.e., the adoption of collective bargaining agreements covering wages, hours, and conditions of employment even though statutes of statewide concern also govern wages, hours, and conditions of employment.").

Wisconsin Constitution do not permit political accommodations. They are simply ordered. If the change involved is not only costly but also unpopular, it will understandably be perceived as denying local governments the power to control their own destiny.

¶ 191. It can be argued that courts exist for the very purpose of vindicating "rights" that might otherwise be disregarded by political majorities. But courts undermine their legitimacy in making calls that antagonize majority opinion when they slam the door on a full airing of facts and views. The municipalities here are representative of many other local governments in Wisconsin whose interests should be fully considered.

## VI

¶ 192. The third element of the rule is impairment of interest. The essence of this element is that the movant's interest may as a practical matter be impaired if the movant is not allowed to protect it by participating in the suit.

¶ 193. It is clear that a decision on the merits in the plaintiffs' favor would immediately impair the rights of Cottage Grove, Watertown, and Oostburg because these municipalities are currently enrolled in DETF health care plans. The court of appeals reached the same conclusion, *Helgeland v. Wisconsin Municipalities*, 2006 WI App 216, ¶ 19, 296 Wis. 2d 880, 724 N.W.2d 208, but the majority inexplicably does not. The majority concludes that, since the municipalities are not parties to any contract at issue in the present litigation, the municipalities' interest "cannot be directly impaired by Helgeland's action." Majority op., ¶ 75. The majority's conclusion cannot be correct. The three municipalities are part of DETF plans that would

be directly affected by a ruling favoring the plaintiffs. As a result, their financial interests would be impaired in a direct and immediate fashion. If we do not know in more detail the financial effect on the three municipalities, we can attribute that deficiency to an underdeveloped record caused by the involuntary absence of the municipalities as intervenors.

¶ 194. The municipalities also couch the impairment of interest element in terms of the negative effect of stare decisis on all eight movants if the plaintiffs were to prevail on the merits. The majority acknowledges the adverse effect that stare decisis might have on the municipalities, but it describes this impact as generic, that is, "essentially the same effect that *any* employer might claim when an action before the court threatens to increase costs that the employer is obligated to pay . . .". Majority op., ¶ 84 (emphasis added). This comment unduly downplays the effects of a possible constitutional ruling on future litigation.

¶ 195. *Black's Law Dictionary* defines "stare decisis" as "[t]he doctrine of precedent, under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation." *Black's Law Dictionary* 1414 (7th ed. 1999). Under the doctrine of stare decisis, a legal precedent is established when a court expressly decides a specific issue of law.[7] *Moore, supra,* § 24.03[3][b], at 24–42.2. Thus, an intervenor's interest can be impaired, as a practical matter, if a

---

[7] The doctrine of stare decisis differs from that of res judicata, which involves a decision about a factual controversy rather than an issue of law. 6 James William Moore et al., *Moore's Federal Practice* § 24.03[3][b], at 24–42.3 (3d ed. 2002). The 1966 amendment to Rule 24 eliminated the requirement that a movant be legally bound by the outcome of the action. *Id.* at 24–42.4.

pending action will cause a stare decisis impact that is harmful to the applicant. *Id.*

¶ 196. Federal courts have analyzed the impact of stare decisis in different ways. The majority cites *Bethune Plaza Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1998), for the proposition that stare decisis should establish a Rule 24(a)(2) impairment "infrequently," and it cites authority for the notion that stare decisis is merely "an important consideration." Majority op., ¶ 78, ¶ 78 n.69 (citing *United States v. State of Oregon*, 839 F.2d 635, 638 (9th Cir. 1988)). However, other federal courts have found the impact of stare decisis to be a determinative factor. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1309–10 (11th Cir. 2004) (noting that "the potential for a negative stare decisis effect 'may supply that practical disadvantage which warrants intervention of right' "); *Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Dept. of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (recognizing that "the stare decisis effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)"); *Anderson Columbia Envtl., Inc. v. United States*, 42 Fed. Cl. 880, 882 (1999) ("The potential stare decisis effect of a decision often supplies the 'practical impairment' required by Rule 24(a).").

¶ 197. There are several reasons why stare decisis is a weighty factor in this case. In 1992 the court of appeals rejected a discrimination and equal protection claim based on facts similar to the present suit. *Phillips v. Wis. Pers. Comm'n*, 167 Wis. 2d 205, 482 N.W.2d 121 (Ct. App. 1992). The *Phillips* decision has served as the controlling precedent in Wisconsin for 15 years. It continues to bind the court of appeals and circuit courts. *See Cook v. Cook*, 208 Wis. 2d 166, 560 N.W.2d 246 (1997). Any decision overruling *Phillips* will re-

quire action by this court. If this court were to overrule *Phillips*, the new decision would bind Wisconsin courts just as *Phillips* has bound Wisconsin courts; and if this court's decision were based on the Wisconsin Constitution, as plaintiffs request, even the legislature could not change the law without first securing an amendment to the Wisconsin Constitution. Thus, the municipalities have a vital interest in shaping the record that will be presented to this court. To do so, they must intervene. If the municipalities are denied the right to intervene in the circuit court, they are less likely to gain intervenor status at the appellate level and will lose any right to shape the record.

¶ 198. The import of stare decisis is neatly presented by novel issues of statutory construction, *Moore*, *supra*, § 24.03[3][b], at 24–42.2, and this suit is a classic example. Negative stare decisis would impede the municipalities' efforts if they chose to assert their interest separately in future litigation, as the controlling construction of the word "dependent" in Wis. Stat. § 40.02(20) would effectively foreclose their position. Courts are not going to construe the statutory term "dependent" to have different meanings in municipal and state beneficiary contexts.

¶ 199. In short, there are both direct financial impacts and likely stare decisis impacts potentially at play in this case, and these effects satisfy the impairment of interest requirement.

## VII

¶ 200. The fourth and final requirement for intervention as of right is that the movant's interest is not adequately represented by existing parties.

¶ 201. The United States Supreme Court has stated that the adequate representation requirement "is

satisfied if the applicant shows that the representation of his interest 'may be' inadequate" and "the burden of making that showing should be treated as *minimal.*" *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citing 3B J. Moore, *Federal Practice* 24.09–1 (4) (1969)) (emphasis added). "[P]roposed intervenors need show only that there is a *potential* for inadequate representation" to satisfy this requirement. *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999). Accordingly, the key inquiry for this requirement is whether an existing party *may* not adequately represent the interest of a proposed intervenor, not whether an existing party *will* not adequately represent that interest. In this regard, it may be enough to show that the existing party will not make all the arguments that the proposed intervenor would make. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) ("For example, it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.").

¶ 202. In 1994 this court listed several factors for evaluating adequacy of representation. The court said it looked to see (1) whether there is a showing of collusion between the existing "representative" party and the opposing party; (2) whether the representative party's interest is adverse to that of the proposed intervenor; *or* (3) whether the representative party has failed in the fulfillment of its duty. *Armada*, 183 Wis. 2d at 476 (citing *Sewerage Comm'n of City of Milwaukee v. State DNR*, 104 Wis. 2d 182, 189, 311 N.W.2d 677 (Ct. App. 1981)). The court also repeated the statement from *Trbovich* that the showing required should be treated as "minimal." *Id.* (quoting *Trbovich*, 404 U.S. at 538 n.10).

¶ 203. Although the court's three criteria, properly interpreted, do not create an especially difficult hurdle to intervention, these criteria are not meant to be exhaustive.[8] There may be a variety of additional circumstances that suggest that representation by an existing party is inadequate. *See Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999) (observing that the trilogy—"adversity of interest, collusion or nonfeasance"—may not have been intended to be an exclusive list). Demonstrating that a movant's interest is different in kind or degree from that of a named party may suffice to establish inadequacy of representation. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544–47 (1st Cir. 2006).

¶ 204. Diversity of interest can be the conclusive factor when evaluating the adequacy of representation. As the Wright treatise notes, "[t]he most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties. *If the interest of the absentee is not represented at all*, or if all existing parties are adverse to the absentee, *then there is no adequate representation.*" 7C Charles Alan Wright et al., *Federal Practice and Procedure: Civil 3d* § 1909, at 393–94 (2007) (footnotes omitted) (emphasis added) (hereinafter *Wright*). Significantly, the treatise goes on to state:

> If there is a significant difference between the interest of the absentee and that of the party, there is a risk that the party will not provide adequate representation of

---

[8] *See* 7C Charles Alan Wright et al., *Federal Practice and Procedure: Civil 3d* § 1909, at 393 (2007) ("The wide variety of cases that come to the courts make it unlikely that there are three and only three circumstances that would make representation inadequate and suggest that adequacy of representation is a very complex variable.").

93

the interest of the absentee. A discriminating appraisal of the circumstances of the particular case is required. Since the rule is satisfied if there is a serious possibility that the representation may be inadequate, *all reasonable doubts should be resolved in favor of allowing the absentee, who has an interest different from that of any existing party, to intervene* so that the absentee may be heard in his own behalf.

*Id.* at 440 (emphasis added).

¶ 205. Diversity of interest tips the balance toward granting intervention in this case. DETF and the municipalities have different functions. DETF administers benefit plans for public employees. It is an agency of state government; it is not a separate government entity. By contrast, cities, villages, towns, and school districts are separate governments. Although they must operate within "limits" imposed by state law, these governments set their own budgets and make their own policy. The limits include revenue limits for public schools (Wis. Stat. § 121.91), and levy limits for cities, villages, and towns (Wis. Stat. § 66.0602). These limits distinguish the municipalities from the state, which has much greater latitude than local governments in taxing and spending. These limits implicate a different evidentiary record than the record that might serve the state's exclusive interest.

¶ 206. Given the difference in their status, the municipalities question the strategy the Attorney General has employed to defend the constitutionality of Wis. Stat. § 40.02(20), i.e., the strategy of opposing discovery and moving for judgment on the pleadings. The State's strategy relies entirely on the continuing validity of *Phillips*, even though *Phillips* did not decide head-on some of the issues now presented by the plaintiffs.

¶ 207. Wright notes that "[a] mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are *identical* with that of an existing party or who are formally represented in the lawsuit." *Wright, supra*, § 1909, at 431–36 (emphasis added).[9] Fair enough. However, the interests of DETF and the municipalities are *not* identical, and the differences should not be dismissed using words like "attenuated" to shore up the analysis. *See* Majority op., ¶ 71.

¶ 208. In the court of appeals, Judge Charles Dykman observed in his concurrence/dissent that the approach of an attorney general is fundamentally different from that of private counsel hired to represent a client. *See Helgeland*, 296 Wis. 2d 880, ¶ 59 (Dykman, J., concurring in part, dissenting in part). Alluding to former Attorney General Peggy Lautenschlager, Judge Dykman stated: "The attorney general is required to defend the statute at issue, but how she does so and what issues she raises or does not raise are up to her. She determines how the case will be defended, for better or worse." *Id.* This is precisely the problem facing the municipalities and one that should not be summarily dismissed.

¶ 209. Judge Dykman added:

> A good way to create mistrust is to deny participation in government. Of course, there is an endpoint to

---

[9] The Wright treatise notes that when parties have *identical* interests mere differences of opinion regarding litigation tactics are not evidence of inadequate representation. *See* 7C Charles Alan Wright et al., *Federal Practice and Procedure: Civil 3d* § 1909, at 431–36 (2007). However, the treatise makes the important point, by implication, that when parties' interests are *not* identical, a difference of opinion regarding strategy may be a factor to consider.

participation; lawsuits cannot be open to whoever wants to participate or only chaos wins. But here, the only factor keeping the municipalities from participation as a party is the majority's conclusion that, despite statements by the State's attorney which at least raise doubts, the statements do not amount to much. Perhaps they do not, but I believe that there is a reasonable perception that the attorney general has taken a position contrary to the one she advocates on the merits of this litigation.

*Id.*, ¶ 61.

¶ 210. From the circuit court to the supreme court, Department of Justice attorneys have opposed intervention by the municipalities. A change in attorneys general has not altered the Department's position. If the State ultimately wins this case on the merits, its consistent opposition to the municipalities' intervention will be forgotten. But if the State loses the case, the State's opposition will be seen as hubris or collusion, and, in either event, a contributing factor to the defeat.

¶ 211. If intervention by the municipalities were likely to make this suit "fruitlessly complex or unending," *Smuck*, 408 F.2d at 179, denial of intervention would make sense. But denial of intervention here has prolonged the litigation, not shortened it, and has undermined the alleged urgency of the plaintiffs' circumstances. The municipalities' desire to develop a factual record establishing their particular financial and policy-setting interest cannot reasonably be described as weakening the State's position.

¶ 212. When this case returns to circuit court, the municipalities will have been kicked off the field and told they have the privilege of cheering for the State from the bleachers. As they prepare to wave their rally

towels, they may note the irony of the plaintiffs' importing counsel from Illinois to explain Wisconsin civil procedure to Wisconsin courts, and of the American Civil Liberties Union seeking to vindicate diversity of lifestyles while successfully squashing diversity of views.

¶ 213. If the municipalities are disappointed by their remote seats, they will surely get over it once they accept the heartening "presumption" that the DETF adequately represents the municipalities' interest.

## VIII

¶ 214. This is not a close case. The municipalities have satisfied all the tests under Wis. Stat. § 803.09(1) for intervention as of right. Because the majority holds otherwise, I respectfully dissent.

¶ 215. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and ANNETTE KINGSLAND ZIEGLER join this dissent.